## JOSEPH WARREN v. FRANCIS KELLY.

Where the relation of landlord and tenant has not existed between the parties, it is not necessary to show that a demand of the possession was made in writing, before the commencement of an action of forcible entry and detainer, under the statute.

It would seem that where such demand is necessary, the failure to make it must be set up at the commencement of the defence, and not deferred to be relied upon at the trial on the merits.

In an action of forcible entry and detainer, under the statute, where the plaintiff shows that he was in possession of the premises, and that the defendant took advantage of his casual absence to seize the possession, which he forcibly detained, it is no answer to show that the title to the premises is not in the plaintiff, but in another claiming by adverse title, by whose permission defendant took possession.

That there is great prejudice in the community against a title, under which the defendant proposed to defend a charge of forcible entry and detainer, is not good cause for change of venue ; nor is it good cause for change of venue, in such case, that the Judge claims land in conflict with said title. This was a clear case of possession wrongfully invaded ; and the decision was based on the ground that the title was not in controversy.

It would seem that a third party cannot intervene in an action of forcible entry and detainer, by merely setting up title in himself to the land in controversy.

Quere, whether the Opinion in this case intimates that compulsory process cannot be obtained, to compel a witness to attend and make affidavit of facts within his knowledge, in support of a motion for a new trial.

Appeal from Travis. Tried below before the Hon. Thomas H. DuVal.

Action of forcible entry and detainer, commenced by Francis Kelly against Joseph Warren, in a Justice's Court, to recover the possession of certain premises, from which it was alleged the plaintiff had been forcibly ejected by the defendant, who still continued forcibly to detain the possession thereof. The plaintiff in his petition described the premises as included in a survey of Thomas Mays, assignee of Daniel J. Gilbert. Kelly had judgment in the Justice's Court, and Warren removed the case by *certiorari* to the District Court, where it was tried anew.

June Term, 1856, defendant Warren filed two motions for change of venue, one upon the ground that a fair and impartial trial could not be had in Travis county, in support of which were the affidavits of two competent affiants, that " there ex- " ists in said county a strong and violent prejudice against the " title of Thomas J. Chambers to the tract of land situated in " said county, a part of which is in controversy in the above " entitled cause, and which said portion said defendant holds " under the title of the said Chambers," &c., amply sufficient for a change of venue, if the title had been in question ; and further, " and affiants further say that the prejudice which exists " against said title, exists against the right set up by said de- " fendant under said title, and affiants say that in consequence " of the claim which said defendant has made as aforesaid, un- " der the title of said Chambers, very much prejudice exists " against said defendant personally in said county. For the " reasons hereinbefore stated, these affiants say, that they are " satisfied that said defendant cannot obtain a fair and impa- " rtial trial of said cause in the county aforesaid."

The other motion for a change of venue was on the ground that the presiding Judge of the district had an interest in a part of the tract of land, a portion of which was involved in

Vol. XVII. 35

the suit, and claimed adversely to the title under which the defendant claimed.

July 30th, 1856, petition of Thomas J. Chambers for leave to intervene, alleging title and possession of the premises in himself. To the petition of intervention, Kelly filed exceptions, which were sustained.

The evidence showed that Kelly had been in possession of the premises several years ; that it was a second house on his premises, some distance from the one in which he resided ; that he had recently had corn-fodder in it, but had just cleaned it out with the view of putting into it the family of one of his hired laborers ; that the defendant came to plaintiff and wanted to rent it ; that plaintiff replied he would see ; that that night the defendant, assisted by others, took possession, and in the morning when Kelly came, refused to give him the possession, and forcibly kept it. There was evidence, also, that the premises were within the Gilbert survey, of which the plaintiff was the owner. The Surveyor who proved this fact, on cross-examination, stated that if the line from the back line to the river were run at a right angle, which it purported to be in the field notes of the Gilbert survey, it would run between the houses, leaving the one in controversy out of the survey ; but he also testified to remarkable natural objects for which the survey called, running by which the survey included the premises in controversy. There was some evidence that the defendant acted by permission of Chambers.

The Judge instructed the jury, without request, as follows :

The suit is brought under the provisions of a special statute, relating to forcible entry and detainer. In order to entitle a party to maintain a suit under this statute, it is not necessary that he should have an absolute title to real estate. It is sufficient if he has the possession, or right to possession thereof, and has been unlawfully dispossessed of the same.

If the jury believe from the evidence that the plaintiff had the possession of, or right of possession to the premises, for

which he now sues, at the time of the alleged forcible entry, and that he still has the right to possess the same, and that the defendant wrongfully took possession of, and still holds the same, then he is guilty of forcible entry and detainer within the meaning of the statute, and you will find him guilty of the same; provided, further, that you believe from the evidence that the premises are situated within the limits of the survey described in the plaintiff's petition.

In determining whether the said premises are included in the boundaries of the survey aforesaid, you will, in addition to any evidence which may have been given before you in relation to that point, receive it as a legal charge from the Court, that the course and distance as described in the field notes of a survey, must yield to calls for natural objects, or well defined and marked corners; so that. if you believe from the evidence that this survey, if made in such manner, would include the premises sued for, this is sufficient.

The following instructions were given at the request of the plaintiff:

No demand in writing for the possession of the premises, before the beginning of this suit, is required by the law, provided the jury believe that the relation of landlord and tenant did not exist between the parties at the time, nor before the injuries complained of.

It is sufficient for the defendant to maintain his action (provided the jury believe that the house in controversy was, at the time the offence is charged, in the possession, under the control, or occupied for any purposes by plaintiff,) that defendant forcibly took possession of the same, and that said house is situated in the place described in plaintiff's petition. If all the above facts are found they will find for plaintiffs.

The following instructions were asked by the defendant, and refused:

If the jury believe, from the evidence, that no demand in writing of possession of the premises has been made of the

defendant Warren by plaintiff Kelly, they are to find for defendant.

If the jury believe from the evidence, that if the Gilbert survey, as set out in the patent, were run out according to the calls of the field-notes in said patent, it would not include the house occupied by defendant Warren, they are to find for defendant.

If the jury believe from the evidence, that the plaintiff Kelly was not in actual possession of the house now occupied by Warren, at the time Warren first entered the same, they are to find for defendant Warren.

Verdict and judgment for plaintiff.

Motion for a new trial on several grounds, among which was the ground that the premises were not included in the Gilbert survey, in support of which the defendant filed the affidavits of several witnesses, and other evidence. Motion overruled.

. It appeared by bill of exceptions, that George W. Davis had been suppoenaed as a witness for defendant and attended Court several days, but failed to attend at the hearing of the motion for a new trial, whereupon defendant prayed an attachment for him, having first made affidavit of said Davis' knowledge of facts respecting the boundaries of the Gilbert survey, which would show that the premises in controversy were not within that survey, and that said Davis had set a time to appear and make affidavit thereof, but afterwards failed and refused. The Court refused the attachment and defendant excepted. It did not apper that Davis testified at the trial.

Appeal by Warren alone.

*Newton* and *Alexander*, for appellant.

*Oldham & Terrell*, and *Sneed*, for appellee.

LIPSCOMB, J. This suit was brought by the appellee before

a Justice of the Peace, for a forcible entry and detainer, under the Act of the Legislature of the 15th March, 1848, (Hart. Dig. p. 449 ;) and believing, as we do, that whether any of the supposed errors presented by the record can be sustained, depends upon the construction of the first Section of the Act under which the suit was brought : we will here transcribe it. The Section reads as follows, i. e.

" That if any person shall make an entry into any lands, ten-" ements, or other real property, except in cases where entry " is given by law, or shall make any such entry by force, or if " any person shall wilfully and without force, hold over any " lands, tenements, or other real property, after the determin-" ation of the time for which such lands, tenements, or other " real property, were let to him, or to the person under whom " he claims, after demand made in writing for the possession " thereof, by the person or persons entitled to such possession, " such person shall be adjudged guilty of forcible entry and " detainer, or forcible detainer, as the case may be, within the " intent and meaning of this Act."

It is very obvious that the Section embraces two classes of cases, for the exercise of the summary remedy. The first, and, as we regard it, much the most important for the preservation of the peace, is a forcible entry and detainer, where there is no subsisting relation of landlord and tenant, between the parties ; and the other, when that relation does exist. In the first, the written notice to surrender the possession, required by statute, does not apply. In the second, that notice must be given before the suit is brought. This case being of the first class, it was not necessary to give the notice at all. In the case before us, however, if we are in error, and the notice should or ought to be required in both classes of cases, still it could not be available for the appellant, because it should have been taken in the commencement of his defence, and it was not until the case was put to the jury that the objection was made. This last view, however, is not to be regarded as a manifestation of a want of confidence in the correctness of the construc-

tion we have given to the statute.  We therefore believe the
Court below did not err in refusing to instruct the jury, that
the notice was essential to the plaintiff's right to recover.

It will be seen that the Act of 1848, the first Section of
which we have transcribed, contains no inhibition against
bringing in controversy the estate, or merits of the title to the
land in question.  The Act of February 5th, 1840, providing a
summary remedy to enable landlords and lessors to obtain pos-
session of lands and tenements unlawfully detained or withheld
from them, by the 11th Section, (Hart. Dig. Art. 1767,) has an
express provision, that "the estate, or merits of the title shall
not be brought in question."  This statute only embraces one
class of the cases included in the first Section of the Act of
1848, the cases where the relation of landlord and tenant sub-
sists, and omits cases of forcible entry and detainer.  This
omission to prohibit, in express terms, an inquiry into the
legal title, has no doubt induced some to believe that in both
classes of the cases included in the first Section of the Act of
1848, the merits of the title may be inquired into.  We have
no doubt that this is an error and a misconception of the true
construction and object of the Act; that in both cases, the
inquiry is confined to the right of possession, as distinguished
from the title to the land.  In the case of Camley v. Stanfield,
which was a case of a landlord, or lessor against his tenant
or lessee, under the Act of 1848, we held that the extent to
which we could go, was to allow the tenant in possession to
protect his possession, by showing title in himself, not incon-
sistent with the title of his landlord.  The tenant had pur-
chased the land at a sale under an execution against his land-
lord, and therefore acquired the landlord's title, and occupied
the position as vendee from him.  In such case we regarded
the landlord's right to possession as having been merged in
and followed the title.  (10 Tex. R. 546.)  There is nothing
in the case cited, against the rule that the right of possession
must be the question, and not the title to the land, in an ac-
tion like the present.

Warren v. Kelly.

But, in an action for a forcible entry and detainer, the reason and the policy of the law shows most clearly, that the trial should be strictly confined to the right of possession, without regard to which party had the title to the land. If one holding title to the land was permitted, by himself or his agent, with force and arms, to dispossess one in the peaceable possession, the consequence would be breaches of the peace, oppression and bloodshed; and trial by the use of the bowie-knife and the revolver would be resorted to, instead of the quiet and peaceable remedy afforded by the due course of law in the judicial tribunals of the country.

The Act of the Legislature, we have been discussing, was designed to give a summary and peaceable remedy for the violation of every one's possession, without stopping to inquire which party had the title to the land. It declares to the party claiming title, Your title may be good, the Courts of the country are open to you, to try your title and obtain possession if you have the title; but you shall not be permitted to take the remedy in your hands, and by violence turn out one who has the peaceable possession; if you do, you will be compelled to restore the possession and pursue the due course of the law.

It is believed that the several assignments of error can be satisfactorily answered by a reference to a misconception of the law, in supposing that the title could be enquired into, and that if it was shown that the plaintiff did not own the land, it would be a justification of the forcible entry and detainer of the possession from him.

The application for a change of venue was not rested upon affidavits of a prejudice against the defendant, charged with committing the forcible entry and detainer, but upon the general prejudice against Chambers' title. The existence of such prejudice may have been true, but his title, whether unpopular or not, had nothing at all to do with the question of the possession, and it would not and ought not to have had any influ-

ence, one way or the other ; and if the plaintiff had admitted that the title was not in him, but in Chambers, it would not have, in the least degree, affected his right to recover the possession of the premises, from which he had been forcibly driven.

The same may be said of the recusation of the Judge, that he claimed land embraced within Chambers' title.

So, too, as to the assigned error in refusing to permit Chambers to intervene and set up his title. His title gave him no interest in the trial of the right of possession. It could not be impaired by the decision in the case, nor could the judgment be given in evidence on a trial of the validity of his title. He, therefore, had no interest on which to rest his claim to intervene.

The same may be said of the grounds for a new trial. It was not material if the plaintiff was mistaken in supposing that the possession was located within the Gilbert survey ; the possession was sufficiently described and identified, if it had been admitted that it was not within the limits of that survey ; therefore it was not important what number of witnesses would have sworn that the *locus in quo* of the premises was not within the survey that the plaintiff had supposed in his petition that it was in. It could only have been important, if he had rested its identity upon that description and no other.

The appellant charges that the Court below erred in refusing his motion to attach George Davis, to compel him to attend and make an affidavit in support of his motion for a new trial. This was a most extraordinary motion ; but it would have been still more extraordinary had the Court granted it. If, however, Davis had made the desired affidavit, as appellant wished he would swear, it would only have gone to the question of the boundary of the Gilbert survey, which would not have been entitled to any influence with the Court on the question of a new trial. We find no error in the record, and the judgment is affirmed.       Judgment affirmed.