ELY-WALKER DRY GOODS COMPANY v. W. B. COLBERT.

Decided January 19, 1910.

1.—Collateral Security—Expense of Collection—Charge.

The assignee of a note and mortgage holding it as collateral security for a debt of the assignor was entitled, without further authority from the latter, to take necessary and proper steps to collect same, and an agreement that such security should be attached to and kept with the note it was

assigned to secure would not deprive the assignee of the right to take proper steps, consistent with such agreement, to protect his security, such as employing lawyers to look after it where circumstances rendered that course advisable; for the expenses so incurred he was entitled to credit in accounting to the assignor for the amount realized on the collateral. See charge on this subject held erroneous and not cured by charge conflicting with it.

**2.—Same.**

Where the intention and effect of a parol agreement as to the custody of a note was a question of fact for the jury, instructions giving it a certain effect as matter of law were properly refused.

**3.—Same—Attorney and Client.**

The holder of collateral security is entitled to credit, in accounting to the assignor for the proceeds realized, only for such charges by his attorneys collecting same as were legal and proper.

**4.—Collateral Security—Charge.**

The holder of collateral security was not entitled to deduct the expenses of collecting same in accounting to his debtor for the amount realized on the collateral, where it was held under an agreement precluding him from taking any steps for its collection.

Appeal from the County Court of Hays County. Tried below before F. J. Maier, Esq., Special Judge.

*R. E. McKie,* for appellant.—Regardless of any contract as to where the collateral was to be kept, it was the duty of appellant to look after, protect and collect same in like manner that an ordinarily prudent owner of like paper would have done under the circumstances, and appellant was entitled to reasonable expenses incurred in so doing. 22 Am. & Eng. Ency. Law (2d ed.), pp. 899, 901, 905; Colebrook on Collateral Securities, pp. 174-6, 173, note a; Hanover Natl. Bank v. Brown, 53 S. W., 215; Larkin v. Dawson, 37 Texas Civ. App., 345.

Appellant was entitled to recover from appellee and retain from the proceeds of said collateral such sum as it was reasonably necessary to expend in the protection and collection thereof. 22 Am. & Eng. Ency. Law, pp. 870, 905; Colebrook on Collateral Security, p. 230, secs. 128, 173, note a; Mansur-Tebbetts Imp. Co. v. Carey, 45 S. W., 120; Hanover Natl. Bank v. Brown (Tenn.), 53 S. W., 215.

It was not the duty of the appellant to get permission from appellee before incurring any expenses in protecting the collateral in its hands, provided such expenses were such as an ordinarily prudent and careful man under like circumstances would have incurred in the protection of a note and mortgage of his own, unless an express contract had been entered into that appellant would incur no such expense without the consent of appellee. 22 Am. & Eng. Ency. Law (2d ed.), p. 894; Colebrook on Collateral Securities, p. 176, sec. 91; Jackson v. Chemical Natl. Bank, 46 S. W., 295.

*Will G. Barber,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by appellee Colbert to recover from the appellant the sum of $297, the balance claimed by

appellee to be due on a note collected by appellant, which was left in the keeping of appellant as collateral to secure a $2500 note executed by Colbert and his partner Ivey. The collateral note was for $3500, executed by appellee's brother and payable at Jackson, Miss., secured by a mortgage lien on certain properties there situated. The appellant, through its attorneys at Jackson, Mississippi, collected the full amount of the note with interest, which was remitted to them by the attorneys less $297, $6.50 of which was charged as exchange and $6.30 as court costs, and the balance retained by the Jackson attorneys under the claim that it was a reasonable compensation for their services in and about the investigation of the solvency of the maker, the title of the property that stood as security for the note, and an effort to get the maker to pay the same, etc., and in the actual collection of the note from the maker. The amount so received by appellant from the Jackson attorneys was promptly remitted to the appellee at San Marcos, Texas, which was received by him. Before the Jackson note was collected the appellee paid off and discharged his debt to the appellant.

Appellee's suit is based upon the proposition that he was entitled to the full sum of the note that was collected from the maker at Jackson; that he did not authorize the appellant or the attorneys at Jackson to make any effort to protect this note, or to collect the same, or to inquire into the solvency of the maker, or to bring any suit or to incur any court costs or to examine the status and title of the property that stood as security for the note. Further, that there was an agreement between him and appellant, when the note was deposited with them as collateral, that the same should be attached to his note and should be kept by them at their place of business in St. Louis.

The appellant pleaded that all the charges made by the attorneys at Jackson, Miss., were proper, legal and reasonable, and that they were justified in order to protect the security to pursue the course they did in forwarding the note to the attorneys at Jackson for investigation and for collection.

There was evidence upon these questions, and there was also evidence to the effect, coming from appellant, that there was an agreement between it and the appellee that it could have the title of the property and the solvency of the maker, etc., investigated, but upon this last issue, although proven, there was no pleading.

The case was tried before a jury and verdict and judgment were in appellee's favor for the full amount sued for.

Appellant's first assignment of error complains of the following charge of the court: "If you believe from the evidence that at the time the plaintiff W. B. Colbert delivered to Ely-Walker Dry Goods Co. said note and trust deed, it was expressly agreed between them that said note and trust deed should be kept by said defendants at St. Louis, Mo., and that the plaintiff never agreed and consented that said note and trust deed should be turned over to attorneys for protection or collection, and that defendant turned said note and trust deed over to Brame & Brame, of Jackson, Miss., without the consent of plaintiff, then plaintiff is entitled to recover from the defendant

said $297, with six percent interest per annum from the date Brame & Brame received the money, and if you so find from the evidence, you will return a verdict in favor of plaintiff W. B. Colbert for said amount." It is contended that this charge is erroneous because, notwithstanding the fact that there might have been an agreement that the note and the trust deed should be kept by the defendant at St. Louis, and that the plaintiff never consented or authorized it to use efforts looking to the protection or collection of the note, they would, nevertheless, be entitled to take such steps as a person of ordinary prudence would do, looking towards the necessary protection of the collateral and for the collection of the same. We are inclined to the opinion that, for the reasons stated, the charge is erroneous. Notwithstanding the existence of the state of facts presented in this charge, the holder of the collateral might, under certain circumstances, be justified in taking steps looking towards the protection of the paper and for its collection; and there is evidence in the record that would justify the submission of this question to the jury. In fact, the trial court did, in a subsequent portion of its charge, instruct the jury that if there was no express agreement to the contrary, the holder of the collateral could take such steps as a person of ordinary prudence would be expected to do, looking towards preserving and protecting the security. There may have been an express agreement for the appellant to retain the note and the deed of trust at St. Louis, but it was not absolutely essential for the Jackson attorneys to have actual possession of the paper for at least a part of the services that they rendered; and it would be a question of fact as to whether these services were reasonable and could be charged to the appellant or the owner of the note. It may be true that a successful collection by the Jackson attorneys could not have been made unless they had in their possession the paper, as the payor would not be required to pay except upon surrender of the note and the cancellation of the lien; but the charge is so framed that it excludes all of the items set up by the appellant based upon the services rendered by the Jackson attorneys, if there was an agreement that the note and deed of trust should remain in appellant's possession at St. Louis. We think this charge is erroneous. It is not corrected, as claimed by appellee, by the charge which immediately follows it. While it is true that it permits the appellant to take such steps as a person of ordinary prudence would do under similar circumstances for the preservation and protection of the collateral, still it conflicts with the charge above quoted in the way just pointed out.

There was no error in the court's refusing appellant's charge set out under its second assignment of error. That is to the effect that in determining the merits of the case the jury should not consider the question whether or not Ely-Walker Dry Goods Company agreed with Colbert to keep the note and mortgage in the vaults at St. Louis, because such agreement would not affect the controversy between the parties to this suit; that is, in substance, the charge which was requested and refused. It was for the jury to say what effect should be given to that agreement. The scope and effect of the agreement is not altogether plain. It may be that a jury might justly

reach the conclusion, under the circumstances, that the intention was that nothing should be done by the appellant with reference to the collateral paper except retaining it in their possession at St. Louis. That was a question for the jury and it was for them to say what was meant and what was intended to be accomplished by the agreement.

In subdivision 2 of the court's charge is practically given the rule contended for by the appellant in the charge set out under the third assignment of error, which was refused, except the charge given has embodied in it the expression "if there was no express agreement to the contrary." We think the charge as framed was properly given, and it would have been error to give the one requested, because it ignored the contract made between the appellant and the appellee and the effect that a jury might give to it.

What we have just said also disposes of the appellant's fourth assignment. The charge set out under that assignment is practically the same as the one just discussed.

We can not agree with appellant's contention, urged under the fifth and sixth assignments of error. The first charge quoted under these assignments which was refused, is on the weight of evidence; and as to charge No. 8, set out and refused, we are of the opinion that under the testimony appellant would be responsible to the appellee for any improper items charged by the attorneys at Jackson. They were the attorneys of the appellant, and while it may be conceded that the appellant might have been justified in taking steps looking to the preservation, protection and collection of the note, still, in doing that the attorneys they employed could not legally make a charge which was unauthorized and hold the appellee responsible therefor.

We think a charge substantially as set out under the appellant's seventh assignment of error would be proper to be given on another trial, if the facts are similar. Unless the effect of the agreement pleaded by appellee was to deny the appellant the authority to do anything with reference to protecting and collecting the note, they would have the right to incur reasonable expenses, looking to that end, provided an ordinarily prudent person would have done so under the circumstances.

The other questions raised are on the facts.

We have not overlooked the suggestion of the appellee to the effect that, notwithstanding the error pointed out, the judgment should be affirmed under the facts. We deem is unnecessary to go into a discussion of this question, but we have properly considered it and think that appellee's suggestion is not an answer to the error pointed out.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*