LITTLE SANDY HUNTING & FISHING CLUB et al. v. BERRY et al.
(No. 1797.)

(Court of Civil Appeals of Texas. Texarkana. April 19, 1917.)

1. FORCIBLE ENTRY AND DETAINER ⬮48 — AUTHORITY OF CLUB—CARETAKER TO BRING FORCIBLE DETAINER.

That one was keeper of the premises of a hunting and fishing club, and that it was his duty to "look after and attend to" the club property, did not impliedly authorize him to institute forcible detainer suit against, and evict, one who for some time had been living on the club premises.

2. SHERIFFS AND CONSTABLES ⬮128—WRONGFUL DISPOSSESSION—INDEMNITY.

One who, after instituting a forcible detainer suit, executes an indemnity bond demanded by the constable as a condition upon which he would execute the process by evicting defendant in the suit, becomes liable for damages for the eviction, if it is unlawful, as a party to the unlawful act of the constable.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 136, 260–263.]

3. TRESPASS ⬮27 — WRONGFUL DISPOSSESSION.

Where one has lived for several years on land, he cannot lawfully be forcibly evicted therefrom by the owner, although he is but a trespasser thereon, and the true owner is entitled to the possession.

[Ed. Note.—For other cases, see Trespass, Cent. Dig. §§ 53, 59–63.]

4. DAMAGES ⬮91(1) — EXEMPLARY DAMAGES.

Exemplary damages are allowable only when there is misconduct, or malice, or what is equivalent thereto, and a tort committed by mistake in the assertion of a supposed right, or without any actual wrong intentions, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 193–198.]

5. FORCIBLE ENTRY AND DETAINER ⬮48 — WRONGFUL DISPOSSESSION — EXEMPLARY DAMAGES.

Where the keeper of a hunting and fishing club in good faith instituted a forcible detainer suit against a trespasser on the club property, and secured his eviction, believing the process lawful, he was not liable in exemplary damages.

Appeal from District Court, Wood County; R. M. Smith, Judge.

Action by Aaron Berry against the Little Sandy Hunting & Fishing Club and others. From judgment for plaintiff, certain defendants appeal. Judgment in part reversed and rendered, and in part reformed and affirmed.

The suit was by appellee Berry against appellee G. E. Wright and appellants Joe Holmes and the Little Sandy Hunting & Fishing Club, a corporation. In his petition Berry alleged that on April 1, 1912, he and his brothers, Tom, Frazier, and Green, owned 34 acres of the James Hamblin survey, in Wood county, and that he was then residing with his family in a dwelling house on same. He further alleged that on that day the hunting and fishing club, "acting by and through its general manager," Holmes, and "its officer and director," Wright, "requested and demanded and employed one Mooney to go to the home and premises of said plaintiff there to eject, dispossess the plaintiff from his home and premises, and to remove and throw out of the house upon said above-described land the household goods and effects of the plaintiff," and that Mooney did so, to his (Berry's) actual damage in the sum of $275. He further alleged that in having Mooney to so eject him from the dwelling house and premises the hunting and fishing club and Wright and Holmes acted maliciously and became liable to him for the sum of $2,000 as exemplary damages. It does not appear from the record that Wright

answered the petition. The answers of the hunting and fishing club and Holmes consisted of general denials and of pleas which it is not necessary to detail. The trial of the case resulted in a judgment that Berry take nothing as against Wright, but that he recover of Holmes and the hunting and fishing club $25 as actual damages, of Holmes $100 as exemplary damages, and of the hunting and fishing club $225 as exemplary damages. Both Holmes and the hunting and fishing club have appealed.

It appears from the record that the 34 acres of land claimed by Berry was part of a tract of 1,065 acres, on which was a lake, which the Little Sandy Hunting & Fishing Club had had inclosed, and which it used for club purposes. Holmes was an employé of the hunting and fishing club. It was his duty, he said, "to look after everything and attend to the club property and the lake and all of its belongings." Wright, who was president of the hunting and fishing club at the time Berry was evicted, testified that Holmes "wa's the keeper of the lake and keeper of the clubhouse, attending to it." Without any authority from the hunting and fishing club to do so, further than such as might be implied from his duty to look after the property, Holmes on March 29, 1912, commenced a forcible detainer suit against Berry in the justice court. Berry and his family then occupied, and for a long time prior thereto had occupied, a dwelling house on the 34 acres, and had and were then, and on April 1, 1912, when they were forcibly evicted therefrom by Mooney, using the premises as their home. Mooney was the constable, and in evicting Berry and his family acted in pursuance of the command in void process, directed to him as constable, issued by the justice of the peace in the forcible detainer suit. It appears that in a suit between one Giles and Berry's father to try the title to and for possession of the 1,065-acre tract, which included the ·34 acres, judgment was, on April 24, 1909, rendered in favor of Giles. It further appears that Giles, by a deed dated October 31, 1910, conveyed the 1,065-acre tract to the hunting and fishing club. And it further appears that Berry did not claim title to nor right of possession of the 34 acres, other than as an heir of his father, who died in 1911.

Jones & Jones, of Mineola, for appellants. M. D. Carlock, of Winnsboro, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] The judgment, so far as it is against the hunting and fishing club, is without evidence to support it. It did not appear that Holmes was authorized by the club to institute the forcible detainer suit against Berry, or that any one authorized by the club to act for it in the matter ever knew anything about the institution of the suit, or the eviction of Berry by virtue of the process issued in it, until after April 6, 1912, when Holmes had the justice of the peace to dismiss the suit. We do not think authority on the part of Holmes to act for the hunting and fishing club could be implied from the fact that he was the keeper of the lake and clubhouse, ·or from the fact that as such keeper it was his duty to "look after everything and attend to the club property and the lake and all of its belongings." The institution of such a suit was not within the scope of any authority Holmes had to act for the club. 2 C. J. 851. Had it appeared that Berry had recently before the institution of the forcible . detainer suit, and while Holmes was acting for the club in looking after the property, become a trespasser on it, there might have been a question as to whether it was within the scope of Holmes' authority, as keeper for the club, to act for it in evicting him. But it appeared that Berry had been occupying the dwelling house and using the 34 acres of land since the death of his father· in 1911 and during many years before that time.

[2-5] We think the judgment is not erroneous so far as it is in favor of Berry against Holmes for $25 as actual damages. The latter, after instituting the forcible detainer suit, by the execution of an indemnity bond demanded by the constable as a condition upon which he would execute the process in his hands by evicting Berry, became a party to the unlawful act of the constable, and as such liable to Berry for the consequences thereof to him. While we agree with Holmes that it appeared that the hunting and fishing club was the owner of the 34 acres of land and entitled to the possession thereof, and that Berry was in the attitude of a trespasser thereon, we do not agree that it would have been lawful for the club, or that it was lawful for him (Holmes) on its behalf, to forcibly evict Berry from the land. The law as determined by the courts of this state is to the contrary of such a contention. Sinclair v. Stanley, 69 Tex. 718, 7 S. W. 511; Baker v. Cornelius, 6 Tex. Civ. App. 27, 24 S. W. 949; Crawford v. Thomason, 53 Tex. Civ. App. 561, 117 S. W. 181. But we think the judgment, in so far as it is in Berry's favor against Holmes for exemplary damages, was unauthorized. Such damages are allowable "only when there is misconduct and malice, or what is equivalent thereto. A tort committed by mistake, in the assertion of a supposed right, or without any actual wrong intentions, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment where the doctrine of such damages prevails." 2 .Suth. on Dam. 1095; Jacobs v. Crum, 62 Tex. 401; Anderson v. Larremore, 1 W. & W., § 949. Holmes was not present when Mooney. evicted Berry. He had noth-

ing to do with the wrong to Berry other than to agree, by the bond he executed, to indemnify Mooney against any liability he might incur in serving the process in his hands. The testimony indicates that Holmes, in executing that bond, acted in good faith, believing the process was lawful and authorized the eviction of Berry. The justice of the peace who issued the process testified:

"I got out the papers myself. Holmes had nothing to do with getting them out. Holmes merely asked me to get out the proper papers for a forcible entry and detainer suit or proceeding, and he never either issued any papers or served any papers. Such papers as were issued, I issued them and turned them over to my constable to serve. I exercised my judgment as justice of the peace in getting out what papers were got out, and Holmes told me what he wanted done. He told me he wanted possession of the house and the property, and I did the best I could in following the statute to select a remedy to get possession of the property for Holmes. He did not say whether it should be by this process or that process, but that was a matter left to me."

Mooney, the constable, testified:

"Neither Holmes nor any of them told me to put him (Berry) out. I told him I was going up there to do that work, and he said that was what they made that bond for. I did not tell him that I was going to put him out. I just told him that I was going to serve those papers. I don't know whether Holmes ever saw any of those papers but this bond. I had not fixed up that bond. Mr. Toney (the justice of the peace) had fixed it up, and I had carried it down there. Now, whether Mr. Holmes had ever saw any of the rest of the papers—he did not after I got them. I did not tell him what I was going to do. He was sick that day and lying on the bed."

In so far as the judgment is against the hunting and fishing club, it will be reversed, and judgment will be here rendered that Berry take nothing against it. In so far as the judgment is against Holmes, it will be so reformed as to deny Berry a recovery of anything as exemplary damages, and to award him a recovery of $25 as actual damages, and, as so reformed, will be affirmed.