**RAY et al. v. DYER et ux.** (No. 3256.)

Court of Civil Appeals of Texas. Amarillo. Sept. 18, 1929.

Rehearing Denied Oct. 9, 1929.

Cook, Smith & Teed, of Pampa, for appellants.

W. M. Lewright, of Pampa, and L. V. Lonsdale, of McLean, for appellees.

HALL, C. J. The appellees, R. L. Dyer and his wife, Vivian Dyer, sued George B. Ray, Farrell Ray, and Dr. Massie to recover damages alleged to have resulted to plaintiffs by reason of the unlawful acts of defendants, their employees and agents, in ejecting plaintiffs from a certain house occupied by plaintiffs as their home. Plaintiffs alleged, in sub-

stance, that they entered into the occupancy of said house and premises with the consent of defendants, and were lawfully possessed thereof on the 17th day of July, 1928; that the defendants, acting through Farrell Ray, did unlawfully, willfully, and by force of arms eject plaintiffs from the house; that the said Farrell Ray, together with Elmer Pruitt, Mark Edwards, one Willingham, and another party unknown to plaintiffs, came to plaintiffs' said home and demanded possession of the premises, and, when plaintiffs refused to give possession, said parties, acting with force and arms, each and all aiding and abetting the said Farrell Ray, and at his instance and request, and as the duly authorized agents of the defendants George B. Ray and Dr. Massie, evicted plaintiffs from said premises by physical force, threw the personal property of these plaintiffs out of the house, and maliciously, willfully, and unlawfully committed an aggravated assault upon plaintiffs, which resulted in physical injuries to each of plaintiffs; that as a result of the physical injuries, plaintiffs were confined for several days and were unable to perform their ordinary duties; and that as a result of said acts, they suffered great humiliation, shame, and mental anguish. They prayed for $3,000 actual damages and $10,000 exemplary damages.

Pleas of privilege were filed by some of the defendants, which were overruled. George B. Ray, Farrell Ray, and Dr. Massie answered by general demurrer, several special exceptions, and a general denial. They further alleged that Dr. Massie owned no interest in the oil lease, or in the house from which plaintiffs were evicted, and had no knowledge of any of the facts alleged.

The Rays alleged that upon the land leased by them and the Plains Drilling Company there was a well producing oil in paying quantities; that prior to the 16th day of July, 1928, the plaintiff R. L. Dyer was employed by the defendants George and Farrell Ray and the Plains Drilling Company to pump said well, for which services he was to receive the sum of $5 per day, and in addition thereto defendants furnished the two-room house mentioned in plaintiffs' petition, and that plaintiffs were entitled to use said house as part of the compensation to R. L. Dyer for his services as a pumper; that Dyer was employed from day to day, and defendants had the right, at any time, to discharge him, and, upon his discharge, defendants were entitled immediately to the use and possession of said house; that they discharged Dyer on the 7th of July, 1928, and asked that plaintiffs surrender possession of the house, and plaintiffs promised to move out at once; that again, prior to the 16th day of July, 1928, defendants demanded possession of the house, and plaintiffs promised to give possession, but made some frivolous excuse for not doing so; that, when Dyer was discharged as pumper, he immediately commenced work on an adjoining lease for another oil company, and was no longer in the employ of defendants; that, upon the advice of counsel, plaintiffs remained in the house for the sole purpose of requiring defendants to evict them, in order that they might have a damage suit against defendants; that on and after the 16th day of July, 1928, plaintiffs were trespassers, and had no right to the house and premises; that, in evicting plaintiffs, no more force was used than was reasonably necessary; that defendants moved the furniture belonging to plaintiffs out of the house, and while they were assisting the pumper, Willingham, who had been employed in Dyer's place, to place his furniture in the house, the plaintiffs assaulted Farrell Ray, striking, beating, and scratching him, thereby inflicting many bruises and painful scars upon the said Farrell Ray, causing him great pain and suffering; that the said Farrell Ray acted only in defense of his person, and he pleads for damages and reconvention in the sum of $25,000.

The case was submitted to the jury upon special issues, and resulted in a judgment in favor of Dr. Massie as against the plaintiffs, and further that the plaintiffs recover of the defendants George and Farrell Ray, jointly, the sum of $750 and interest, and that Mrs. Dyer recover of said defendants jointly $1,000 and interest.

■ The first proposition urged is that, the plaintiffs' possession and use of the premises being in virtue of their employment by appellants, after the termination of said employment and request by defendants to vacate, plaintiffs were trespassers, and appellants had the right to remove plaintiffs from the premises, provided they used no more force than was reasonably necessary to accomplish that purpose. It is contended under this proposition that, when Dyer was discharged by the defendants, the relation of master and servant, rather than that of landlord and tenant, existed between the parties, and, as the possession and use of the house was a part of the compensation being paid Dyer for his services, defendants were entitled to the immediate possession of the house upon the termination of the relation of master and servant, and could lawfully use force in ejecting Dyer and his wife, in the event they failed or refused to surrender possession. It is further insisted that the defendants had the right to eject him forcibly, provided they used no more force than was reasonably necessary to accomplish that purpose. To sustain this proposition, they cite 39 C. J. 91, § 94; Bowman v. Bradley, 151 Pa. 351, 24 A. 1062, 17 L. R. A. 213; Mackenzie v. Minis, 132 Ga. 323, 63 S. E. 900, 23 L. R. A. (N. S.) 1003, 16 Ann. Cas. 723, and other cases.

While the authorities cited support the contention, this is not the law in Texas. In Sinclair v. Stanley, 69 Tex. 718, 727, 7 S. W. 511, 518, the court said:

"Under the fifteenth and sixteenth assign-

ments of error it is contended that, 'it appearing from the evidence that the railroad company had title to, and possession of, the lot, and plaintiff came and erected a house thereon, the defendants, as officers and agents of and acting for the company, had the right to inclose the lot, and remove the house and contents therefrom, provided that in doing so they did only what was reasonably necessary for that purpose.' To this proposition we cannot assent, as we believe it to be in conflict with the great weight of authority, as it certainly is with the established policy of our government and the genius of our laws. Adequate provision has been made in our laws for the recovery of possession of property which has been forcibly taken or forcibly detained; and, as said in Warren v. Kelly, 17 Tex. 551, if one holding title to land was permitted, by himself or his agent, with force and arms, to dispossess one in peaceable possession, the consequences would be breaches of the peace, oppression and bloodshed, and trial by the use of the bowie knife and revolver would be resorted to, instead of the quiet and peaceable remedy afforded by the due course of law in the judicial tribunals of the country. While there are decisions of courts of undoubted learning and respectability that sustain the rule insisted upon by appellant, we believe the great weight of authority is contra. Very full reviews of the authorities and learned discussions of this question may be found in the following cases: Dustin v. Cowdry, 23 Vt. 631; Reeder v. Purdy, 41 Ill. 281.

"Although one is permitted to defend a right by force, it does not follow that he is at liberty to recover by force a right which is denied. The latter can only be justified in extreme cases, such as would justify force in preventing crime or in arresting offenders. Cooley, Torts, 168. Upon this theory of the law our statutes, civil and criminal, are founded. Title 45 of the Revised Civil Statutes provides a speedy and effectual mode for the recovery of the possession of lands, the possession of which has been forcibly taken or forcibly detained, in all cases where such entry and detainer is made 'without the consent of the person having the actual possession.' By our Penal Code (articles 572, 575), one is justified in taking human life, under certain circumstances and conditions, in defense of his possession of property, but he is expressly prohibited from doing so to recover possession. The entry by Stanley upon the lot, it seems, did not disturb the railroad company's use of it. If the railroad company had actual possession of the lot, and Stanley made entry without the consent of the company, such entry was unlawful, without regard to ownership, and the company could have effected his prompt removal by proper proceedings for that purpose; but, Stanley having obtained possession, and held it for several days, appellants had no right to forci-

bly eject him by destroying his house and removing his effects from the premises, although the railroad company may, in fact, have been the real owner of the property. Railroad v. Johnson, 119 U. S. 611, 7 S. Ct. 339 [30 L. Ed. 504]."

And in Little Sandy Hunting & Fishing Club v. Berry (Tex. Civ. App.) 194 S. W. 1161, 1162, it is said: "While we agree with Holmes that it appeared that the hunting and fishing club was the owner of the 34 acres of land and entitled to the possession thereof, and that Berry was in the attitude of a trespasser thereon, we do not agree that it would have been lawful * * * for him (Holmes), on its behalf, to forcibly evict Berry from the land. The law as determined by the courts of this state is to the contrary of such contention." To the same effect are the following cases: Baker v. Cornelius, 6 Tex. Civ. App. 27, 24 S. W. 949; Fort Worth & New Orleans Ry. v. Smith (Tex. Civ. App.) 25 S. W. 1032; Heironimus v. Duncan, 11 Tex. Civ. App. 610, 33 S. W. 289.

So, if it be admitted that the relation of master and servant existed between the parties (which we do not decide), and that plaintiffs were trespassers, nevertheless the act of defendants in forcibly evicting plaintiffs was unwarranted, for the reason that, under the statutes of Texas, defendants could, by resorting to distress proceedings or by sequestration, lawfully repossess the house.

What is here said disposes of the fourth proposition also.

The court submitted to the jury the issue whether an assault had been committed, and defines an assault as being the use of any unlawful violence upon the person of another with intent to injure such person, and further, by way of explanation, said: "Violence does not amount to an assault when used in preventing or interrupting an intrusion upon the lawful possession of property, or when committed in self-defense of another against unlawful violence offered to his or her personal property, provided no more force is used than is necessary to accomplish the purpose."

■ By the second proposition the appellants complain that the court erred in not defining the term "unlawful violence." While the charge did not give a legal definition of "unlawful violence," the explanation given by the court of what constituted an assault and the use of unlawful violence was in the language of the Penal Code of 1925 (articles 1138, 1142), and was, we think, sufficient. If there was any error committed in this particular, it was in appellants' favor, because, as heretofore stated, they were not entitled to use any force in evicting the plaintiffs. This disposes of the second and third propositions.

The fifth proposition is: "Appellants, being sued for actual and exemplary damages, by reason of an alleged assault committed by their agents, servants and employees, acting

with the advice and consent of appellants, and appellants having denied this fact, they were entitled to a charge to the jury to the effect that they would not be liable for any damages inflicted by said agents, servants and employees unless said agents, servants, and employees were acting within the scope of their employment."

This proposition can have no reference to the liability of Farrell Ray. According to his testimony. he was a part owner of the lease upon which the house was situated. He testified that Dr. Massie never owned any interest in this particular lease, but that it was owned by George B. Ray and the Plains Drilling Company, and that he was also a partner with George B. Ray and the Plains Drilling Company in the ownership and development of the lease, and that he managed and operated the lease. The Plains Drilling Company is not a party to the action. The jury found in favor of Dr. Massie. The judgment was rendered against only George B. and Farrell Ray. The testimony tends to show that the appellees were injured in the difficulty in which Farrell Ray and Pruitt participated.

The court gave the following special charge: "If, in answer to any special issue submitted to you by the court, you have answered that the witness Elmer Pruitt committed an assault upon the plaintiff R. L. Dyer, then state whether or not such assault was committed by said witness at the special instance and request of defendants, or was the same ratified or approved by defendants." To which the jury answered: "Yes; both." A similar charge was given with reference to Mrs. Dyer, and answered in the same way by the jury. The court's charge was objected to, because it failed to define master and servant, and instruct the jury with reference to the liability of the former for the acts of the latter, while acting within the scope of the servant's authority and employment, and because the court failed to instruct the jury that the defendants would not be liable for damages inflicted by Pruitt, unless he was acting within the scope of his authority and employment, or that such acts were ratified and approved by defendants.

Appellants do not seem to complain of the charge, or the alleged defects therein, as they relate to Farrell Ray, and since he actively participated in ejecting plaintiffs, with their property, from the premises, they do not question the correctness of the charge as it relates to him. We must conclude, therefore, that the complaint, if any, relates alone to George B. Ray, who was not present at the time of the difficulty. The sole question presented, then, by this proposition, is as to the liability of the partner, George B. Ray, for a tort committed by his partner, Farrell Ray, and Pruitt.

Pruitt testified that on the occasion in question he was on the lease alone, looking at the well; that he had been there about 20 min-

utes, when he saw Farrell Ray, Todd, and Edwards come to the house; that he had not talked to Dyer or his wife before the other parties arrived, and did not talk with Farrell Ray after he arrived; that the first thing he saw was Farrell Ray removing the furniture from the house; that he did not hear any conversation between Farrell Ray and the plaintiffs prior to the removal of the furniture; that he helped Farrell Ray move some of the furniture, and this required about 30 or 40 minutes. He further testified that he saw the fight between Farrell Ray and Dyer, and that, when Ray took a chair, belonging to Willingham, into the house, Dyer attempted to remove it, and, when Farrell Ray grabbed the chair, Dyer struck him and the fight commenced; that Dyer had Ray on the floor, and witness heard Ray say he needed a little help; that Mrs. Dyer was kicking Ray at that time, and that witness pulled her away and hit Dyer; that, when he pulled Mrs. Dyer away, she caught hold of his shirt and pulled it over his head; that he only hit Dyer one lick. He stated that his reason for going into the house and striking Dyer was because Farrell Ray, who was his employer, hollered for help, and there were too many on him when he got there; that, if Farrell Ray had not hollered for help, he never would have gone into the house.

■ It appears that Pruitt was employed by the defendants as superintendent of the farming interests on the lease, and that he had been employed by Farrell Ray. As a member of the partnership, Farrell Ray was an agent of George B. Ray, with authority to bind the other members of the partnership with reference to all matters connected with the business of the firm. As manager and superintendent of that lease, he had employed and discharged Dyer as pumper, and had also employed Willingham to succeed Dyer as pumper. As the managing member of the firm, and as agent for the other partners, it was within the scope of his duty and authority to get possession of the house occupied by Dyer. He had authority to employ attorneys and file suit to that end. If, in the performance of his duties, he adopted a method which the law does not sanction, and if, in the pursuance of his illegal method, injuries resulted to the plaintiffs, the partners were liable. Dyer had been given peaceable possession of the house, and was still occupying it, claiming his right to hold possession until he had been paid, and, even if a trespasser and an intruder, this did not deprive him of the right to resist the unlawful acts of Ray and Pruitt, who assaulted Dyer, and, as the jury found, also struck Mrs. Dyer, after Ray had called upon him for help.

That one partner is the agent of all his copartners in matters pertaining to the partnership business is settled law. 47 C. J. 826. It is said in 2 C. J. 847, § 532: "Upon the principle that he who does an act by another does it himself, a principal is liable to third persons

for torts committed by his agent in pursuance of or as a natural result of express orders given by the principal, or which he has expressly authorized or specially directed his agent to commit."

■ While Farrell Ray did not expressly authorize Pruitt to assault either Dyer or his wife, he did authorize Pruitt to help him, and is responsible for any damages which may have resulted to plaintiffs by reason of the violence of Pruitt.

■ The general rule with reference to the liability of one partner for the torts of another is that partners are jointly and severally liable for torts committed by one of them or a servant of the firm. 1 Modern Law of Partnership (Rowley) §§ 504, 505, 506. As said in 2 C. J. 847, § 533, the liability of the principal for torts committed by his agent is not limited to torts which he has expressly authorized or directed. He is liable for all the torts which his agent commits in the course of his employment, and, if the agent commits a tort in the course of his employment, the principal is liable therefor, even though he was ignorant thereof, and the agent in committing it exceeded his actual authority, or disobeyed the express instructions of his principal. Id. 534, states the rule as follows: "In accordance with the above rule, a principal may be held severally liable to third persons where his agent, while acting within the scope of his real or apparent authority, is guilty of assault and battery, conversion, trespass, libel and slander, malicious prosecution, wrongful arrest or false imprisonment or wrongful levy." McFaddin, Wiess & Kyle Land Co. v. Texas Rice Land Co. (Tex. Civ. App.) 253 S. W. 916, Id. (Com. App.) 265 S. W. 888.

We think the court fairly submitted the case to the jury, and did not err in failing to charge the jury as to the right of appellants to the possession of the property. According to the testimony of Dyer and wife, Farrell Ray and Pruitt were the aggressors in the difficulty, and the jury's finding shows that their version of it was adopted.

We have concluded that a proper judgment has been entered. No reversible error is shown, and the judgment is affirmed.