## No. 2850.

### WILLIAM H. SINCLAIR ET AL. *v.* HENRY STANLEY.

1. POWER OF ATTORNEY—RATIFICATION.—A tenant holding under contract with one who assumed without authority to lease the premises may show a written ratification of the lease by the true owner in a suit for trespass upon the property which was committed prior to the ratification.

2. EVIDENCE.—The statement of facts made up by counsel on a former appeal can not be used in evidence for the purpose of contradicting a witness on a subsequent trial. .

3. ARGUMENT OF COUNSEL.—The use of improper language by counsel in argument before a jury, affords cause for reversal only when the preponderance of evidence seems to be against the verdict, or where the verdict seems excessive, and there appears reason to believe that it may have been affected by such language.

4. DAMAGES—CASES CITED.—One who unlawfully enters upon and improves a portion of a tract of land when the other portion is in actual possession by the true owner of the entire tract, may maintain an action for damages against the true owner of the land for a forcible destruction of his improvements, his forcible ejection from the premises, and the removal of his personal effects therefrom. The statute provides a speedy remedy for the removal of one who wrongfully disturbs the rightful possession of land by another, and the law will not tolerate a resort to force to dispossess one in peaceable possession. (Cooley on Torts, 168; Dusty v. Corodry et al. 23 Vt., 631; Ruder v. Purdy, 41 Ill., 281, and Warren v. Kelley, 17 Texas, 551, cited.

5. CHARGE OF COURT.—See opinion for charge of court on the question of damages for forcibly ejecting one from the possession of property, *held* not to contain such error as to require a reversal.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart. .

Appellees brought suit against appellants April 19, 1883, to recover actual and exemplary damages for tearing down his house and destroying his goods situate therein, on the ninth day of April, 1883. It was alleged in the petition that appellee was in the peaceable possession of the house built by him on the ground leased for the term of eighteen months, and had occupied the house since the fourth day of April, 1883, as a restaurant and bar room; that appellants, "with systematic and preconcerted malice," persecuted him, built a fence of plank nine feet high around and against his house, completely closing the en-

trance thereto; that at the instance and on the affidavit of Sinclair, he was arrested on a charge of violating the penal laws of the State, said prosecution being malicious and without probable cause, and taken from his house; that when arrested and taken away he left his son, of tender years, in charge of the house; that after he was arrested and taken away upon a false and frivolous charge, in pursuance of the plot to injure and oppress him, defendants, with others acting under them and by their directions, threw his son out of the house, tore down and demolished the house, reducing it to a mass of rubbish, and carried it and all its contents away; that the value of the house so wantonly and maliciously destroyed and carried away was six hundred dollars; that the value of the goods and personal property so taken away was two hundred and eighty-three dollars and sixty-five cents, including thirty dollars in money; that he sustained damage by being out of employment five hundred dollars; that his feelings have been outraged by the destruction of his property and business and the insult and personal violence to his minor child. Prayer for actual damages as stated and twenty thousand dollars exemplary damages. The petition alleged many circumstances of aggravation.

Defendants answered by general demurrer, general denial, not guilty, and special plea to the effect that Sinclair was president and Ravey superintendent of the Galveston City Railroad Company, an incorporated body which owned and was in possession of the alleged leased premises of plaintiff at and prior to the alleged trespass, and that what they did was in pursuance of their duty to protect the company's property from the wrongful intrusion thereon by plaintiff, effected secretly and fraudulently in the night time, and was in good faith, rightful and in pursuance of advice of counsel.

Other pleadings were subsequently filed by the parties, not necessary to be specified here, and a jury trial had which resulted in a verdict, November 9, 1886, for plaintiff for five hundred and sixty dollars and thirty-four cents actual, and two thousand dollars exemplary damages, and judgment in pursuance thereof.

It was proved that Waul & Walker, as agents for Thatcher & Co., who claimed to own the lot on which appellee built his house, leased the lot to Stanley the latter part of March, 1883, for a term of eighteen months, Stanley paying one month's rent. About April 2, Stanley moved lumber on the lot for the purpose of building a house, and was then notified that Sinclair objected

to his building the house, but says he did not know that the City Railway Company claimed the lot. Sinclair, president of the company, caused the lumber to be carried away from the lot and left at another place in the city. Ravey was superintendent of the railway company. Stanley got other lumber, had the house framed at another place, and during the night of April 4, 1883, moved the material on the lot, erected his house, and was occupying it, carrying on his business on the morning of the fifth of April. The lot was vacant, uninclosed. He took posses-sion under advice of counsel. There were some posts set around a part of out lot 114, of which lot 8, leased by Stanley, and on which he built the house, was a part. On the morning of the ninth of April, appellants caused a plank fence nine feet high to be erected around and against the house, closing the entrance, part of the fence being nailed to the house. This was done un-der advice of counsel to "enclose the lot and take possession of it." Stanley knocked a portion of the fence down, opening the entrance to the house. Sinclair made affidavit against Stanley, charging him with malicious mischief for breaking down the fence. Stanley was arrested and taken away from his house. He left his minor son in possession with instructions to remain until he returned. After Stanley was taken away, Ravey, with a force of men and teams, went to the house, got Stanley's boy out in some way, tore down the house and removed the lumber and the contents of the house to another place in the city, and "piled it up by Thompson's house." Stanley's son testified that Ravey took him by the neck and pants and threw him out of the house on the sand, hurting his arm a little. He attempted to go back in the house, but the timbers were falling and he remained out from fear he would be killed. Ravey testified that he did not put his hands on the boy, simply told him to go out, and he went. No other witness testified as to how the boy was gotten out of the house. Stanley testified that the house and contents were utterly destroyed, the house being knocked into fire wood. Ravey testified that they tore the house down in about ten min-utes, and did it as carefully as they could. Sinclair told Stanley that he did not want any poor man with little shanty within ten blocks of his hotel. The evening the house was torn down it was proved that Sinclair said to Stanley: "They have pulled you down have they?" Stanley replied: "Yes, and I suppose you will pay for it," when Sinclair told him it was a case between a rich corporation and a poor tax payer, and if he brought suit he

would never get a cent, and be a poor man as long as he lived. The railroad track ran across a corner of the lot at the time the house was built on it. In January, 1884, Thatcher & Co. executed a power of attorney to Waul & Walker, ratifying the lease they had made to Stanley. After the previous judgment was rendered for plaintiff, he assigned it to Waul & Walker. And after the judgment was reversed, they reassigned and transferred the judgment back to Stanley. This was done about the time of the trial, and was set up by plaintiff in a trial amendment in reply to defendant's allegations that Stanley had assigned and disposed of the cause of action. It was proved that the assignment to Waul & Walker was a trust, to secure some of Stanley's creditors.

Thatcher & Co., had a connected chain of title to the lot, but one link was defective, and the railway company was adjudged to have the better title, and the court instructed the jury to that effect.

On the trial defendant excepted to the following remarks made by counsel for plaintiff in his opening argument: "I have never had greater interest in any case with which I have been connected than I have in this case. My extreme interest in it is due to my knowledge of the poverty and suffering that have been entailed upon the plaintiff by the wrongful acts of the defendants." Upon exception being made, the counsel stated to the court and jury that he withdrew the language and did not wish them to consider it. After the allowance of the bill on the foregoing exception, counsel for plaintiff used the following language in argument: "I hope now, gentlemen, I will be allowed to proceed. It seems that I never am to have opportunity to prosecute the suit to the end. I need make no remarks about the purpose of the management of this case by the other side. You can see that. You can understand what that means. I began my speech an hour ago, and it is not my fault that I have been interrupted in it and you have been detained so long." To which counsel for defendants excepted. Both of these exceptions were upon the ground that the language was not authorized by the evidence and calculated to divert the jury from the issues in the case.

After the lease to Stanley was introduced in evidence, plaintiff offered the power of attorney from Thatcher & Co. to Waul & Walker, confirming and ratifying the lease, to which defendants objected for following reasons: 1. That it was executed long

after the lease and after the alleged trespasses, and was incompetent to aid the title claimed by plaintiff under the lease. 2. That no evidence had been introduced showing any title in Thatcher & Co. to give the power. The court overruled the objections and admitted the power of attorney, and defendants excepted.

After the evidence was closed, defendants moved the court to withdraw and exclude the power of attorney from the jury, for the reasons stated in the objections to it when offered, and because the evidence did not connect it with any title in Thatcher & Co. The motion being overruled, defendant excepted. On cross examination of plaintiff Stanley, defendant's counsel propounded seven interrogatories to him in the following form: "Didn't you testify on the former trial in effect as follows?"—and after each question counsel would read from the statement of facts made upon the former trial. To four of these questions plaintiff answered yes. To two of them, yes, with some qualification, and to one he answered no. During the course of the evidence on behalf of the defendants they offered to read to the jury, for the purpose of contradicting or affecting the testimony of plaintiff on his direct examination, the passages from the statement of facts used by counsel in connection with the questions asked Stanley on cross examination, and counsel for plaintiff objected, because inadmissible and incompetent, and the court sustained the objection, to which appellants excepted.

*F. Charles Hume,* for appellants: It appearing from plaintiff's trial amendment that his title to recover was derived from an assignment made to him by others after the reversal of the judgment by the Supreme Court, and the defendants having no notice prior to the filing of the trial amendment of any claim against them by him as assignee or otherwise as alleged in his original petition, plaintiff could not lawfully proceed to judgment over defendant's exceptions for want of process advising them of his suit as such assignee. (Rev. Stats., art. 1245; Texas Mexican Railway and Mexican National Construction Co. v. Showalter, Court of Appeals, Galveston Term, 1886; 6 Texas Law Review, 15; Freeman on Judgments, sec. 425.)

That the remarks of counsel being without justification and the verdict of such character as to clearly imply that the jury were unduly influenced thereby, the court should have awarded a

new trial, he cited Railroad v. Irvine, 64 Texas, 535, 536; Railway v. Jerrell, 60 Id., 268–270, and cases and rules there cited; Willis & Bro. v. McNeill, 57 Id., 474–476; Railway v. Levy, 59 Texas, 551.

That, it appearing from the evidence that the railroad company had title to and possession of lot eight, and plaintiff came and erected a house thereon, the defendants, as officers and agents of, and acting for, the company, had the right to enclose the lot and remove the house and its contents therefrom, provided that in doing so they did only what was reasonably necessary for that purpose, he cited Lowe v. Elwill, 121 Massachusetts, 309; Harris v. Gillingham, 6 New Hampshire, 9–11; Stearns v. Sampson, 59 Maine, 568; Hyatt v. Wood, 4 Johnson, 150; 4 American Decisions, 258; Ives v. Ives, 13 Johnson, 235; Jackson v. Farmer, 9 Wendell, 201; Tribble v. Frame, 7 J. J. Marsh (Ky.), 799; Beers v. St. John, 16 Connecticut, 322; Meriton v. Coombs, 9 Mann., Gr. & Scott, 67 E. C. L., 788; Davidson v. Wilson, 11 Queen's Bench, 890; Burling v. Reed, 19 L. J. Queen's Bench, 291; Slater v. Swan, 2 Str., 871; Ambergate v. Railroad Company, 2 El. & Bl., 793; Rea v. Sheaward, 2 M. & W., 424; Terry v. Fitzhow, 8 Queen's Bench, 757; Davies v. Williams 16 Queen's Bench, 546.

*Waul & Walker*, for appellee, relied, among others, upon the following propositions: 1. A person claiming superior title upon an open and doubtful question of law can not constitute himself court and sheriff, forcibly eject and assault the occupant of theretofore vacant and uninclosed land, holding under a title, though a doubtful one, destroy his property and appropriate his money and other personal effects. 2. One who oppressively, maliciously or with gross negligence ejects a trespasser, is liable in exemplary damages. A trespasser may maintain an action for a wanton injury. One who pulls down a house while occupied commits a tort. He who ejects another so as to provoke or commit or endanger a breach of the peace is himself a trespasser, and an action lies against him, citing, Milwaukee & St. Paul Railroad v. Kellogg, 94 United States, 469; Newton v. Harand, 1 M. & Gr., 644; Dustin v. Cowdry, 23 Vermont, 631; Reeder v. Purdy, 41 Illinois, 279; Cook v. Garza, 9 Texas, 357; Cole v. Tucker, 6 Texas, 226; Bowden v. Lewis, 13 Rhode Island, 181; 43 American Reports, 21; Parsons v. Brown, 15 Barbour, 590; Westcott v. Arbuckle, 12 Bradwell (Illinois), 279; Graham v. Roder, 5

Texas, 141; Gordon v. Jones, 27 Texas, 622; Hedgepeth v. Robertson, 18 Texas, 858; Fowler v. Stonum, 6 Texas, 72; Cooley on Torts, pages 57, 58, 85, 190; 1 Waterman Law of Trespass, pages 145, 151, sections 166, 170; Houston & Texas Central R'y v. Maddox, 5 Texas Law Review, 325; Houston & Texas Central Railway v. Rider, 62 Texas, 267; Jacobs, Bernheim & Co., v. Crum, 62 Texas, 401; International & Great Northern Railroad v. Underwood, 64 Texas, 463; Sinclair v. Stanley, 64 Texas, 74; I. M. & H. Railroad Company v. Johnson, 7 United States, 339.

ACKER, JUDGE.    The uncontroverted facts of this case are: That Thatcher & Co. and the Galveston City Railroad Company each claimed to own lot 8 in out lot 141, in the city of Galveston, under a common source and both through judicial sales.    Thatcher & Co. through judgment of the United States court and execution sale thereunder by the marshal; and the railroad company through judgment of the district court of Travis county and execution sale thereunder by the sheriff of Galveston county.    Waul & Walker were agents for Thatcher & Co., and, as such agents, leased the lot to appellee, Stanley, in the latter part of March, 1883, for a term of eighteen months, Stanley paying them one month's rent.    Appellants were officers of the railroad company, Sinclair being president and Ravey being superintendent.    About April 2, 1883, appellee deposited lumber on the lot for the purpose of erecting a house thereon, and appellants had the lumber removed to another place in the city.    The railroad company's track was upon the lot, and cars were being run thereon.    Appellee had his lumber cut and house framed at another place, and during the night of April 4, 1883, erected his house on the lot, and was occupying it as a place of business on the morning of April 5.    The lot was not inclosed.    Appellee continued his occupancy of the house until April 9, when appellants erected a plank wall, nine feet high, around and against the house, completely obstructing the entrance thereto.    Appellee knocked down a portion of this wall so that he could go into and out of his house.    Appellant Sinclair caused appellee to be arrested for knocking down the fence.    When appellee was arrested and taken away by the officer, he left his minor son, about fourteen years of age, in possession of the house with instructions to remain until his return.    While appellee was absent, in custody of the officer, appellants, with a force of men and teams, demolished the

house, and hauled the materal and the personal effects that were in the house, away, and deposited them upon the ground at another place. The lumber of which the house was constructed, and the personal property that appellee left therein, were entirely lost to him. The house was built upon the lot under the advice of counsel. Appellants acted under advice of counsel in what they did, but there was evidence tending to show that they did not fully inform their counsel of the exact situation.

The verdict was for five hundred and sixty dollars and thirty-four cents actual, and two thousand dollars exemplary damages, upon which judgment was entered for appellee, and we are asked to reverse this judgment upon numerous grounds, there being twenty-two assignments of error. The first, second and third errors assigned, relate to the action of the court in overruling appellant's second, third and fifth special exceptions to appellee's trial amendment, in which it is contended that the court erred, because it appeared from the trial amendment that appellee's "title to recover was derived from an assignment made to him by others after the reversal of the judgment by the Supreme Court, and the defendants having no notice prior to the filing of the trial amendment of any claim against them by him as assignee, or otherwise than as alleged in his original petition, plaintiff could not lawfully proceed to judgment over defendant's exception for want of process advising him of his suit as such assignee." But for the earnestness with which the learned counsel insists upon these assignments, we would think there is really nothing in them that should require our consideration.

It clearly appears that the assignment made by appellee of the judgment rendered on the former trial of this case was only as security for debts he owed, and when that judgment was reversed by this court, the parties to the suit were relegated to their respective rights and liabilities as they existed prior to the judgment. If the cause of action was embraced in the assignment made by appellee, it was reassigned to him before the trial which resulted in the judgment from which this appeal was taken. Whatever rights he disposed of by the assignment were restored to him by the reassignments. There was no necessity for the trial amendment, and the court did not err in overruling the exceptions.

It is contended under the fourth assignment of error that the court erred in admitting in evidence over the objections of ap-

pellants the power of attorney from Thatcher & Co. to Waul & Walker, and in refusing to exclude it from the jury at conclusion of the evidence, because it was executed after the lease to appellee, and after the acts and occurrences for which he seeks to recover damages in this suit. The power of attorney in terms expressly ratified and confirmed the lease made by Waul & Walker to appellee, and we think was admissible in confirmation of the authority they exercised in making the lease.

It is contended under the ninth assignment of error that "the court erred in refusing to allow defendants to read the testimony given by the witness Stanley on a former trial, as contained in the agreed statement of facts of that trial for the purpose of contradicting or affecting his evidence given in the pending trial."

We do not think the court erred in the ruling here complained of. It appears from the bill of exceptions that appellee answered every question propounded to him with reference to his previous testimony in the affirmative, with slight qualification as to three of the answers attributed to his former testimony, and these qualifications were only to the extent of saying that "he could not say whether he had so testified or not," and "I said Keenan protested, but can not say whether I said he protested in the name of the company," and "that is what I said, except that I do not remember whether or not I said I didn't think Sinclair or Ravey or Keenan acted from personal spite at me." Each of these qualifications was preceded by an affirmative answer to the following question: "Didn't you on a former trial testify in effect as follows?" followed by reading from the statement of facts made up on the former appeal. The only question contained in the bill of exceptions to which the witness gave a negative answer is the following: "Wasn't the conversation you have spoken of between Sinclair and yourself at the Tremont hotel about this way?" Then follows Sinclair's version of that conversation, as testified to by him. We know of no authority, and counsel has cited none that authorizes the introduction in evidence of the statement of facts made up by counsel on a former appeal for the purpose of contradicting or affecting the evidence of a witness on a subsequent trial. The statement of facts contains what counsel agree upon as the testimony which may be, and frequently is, quite different from the testimony as given by the witnesses. But if such practice was permissible, we do not think the predicate was laid in this instance.

It is contended that the language used by counsel in argument to the jury was prejudicial to the rights of defendants in arousing the prejudices and passions of the jury against defendants, whereby they were led to render the verdict. There being nothing in the record tending to show that the verdict was the result of prejudice or passion or other improper influence, the verdict will not be attributed to the improper language of counsel in argument, especially when such language is immediately retracted and the jury requested to disregard it. As said by this court in Railway Company v. Irvine, 64 Texas, 535, the use of improper language by counsel, within itself, furnishes no sufficient reason for reversing a judgment; and it is only in cases in which the preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes ground for reversal. Parties are not to be punished by reversals for improprieties in their conduct, unless there is reason to believe that the course pursued affected the merits of the case. We find in this case no reason for such belief.

What we have said in considering the first, second and third assignments of error disposes of the twelfth, thirteenth and fourteenth assignments. Under the fifteenth and sixteenth assignments of error it is contended that: "It appearing from the evidence that the railroad company had title to, and possession of, the lot, and plaintiff came and erected a house thereon, the defendants, as officers and agents of, and acting for, the company, had the right to enclose the lot and remove the house and contents therefrom; provided, that in doing so, they did only what was reasonably necessary for that purpose."

To this proposition we can not assent, as we believe it to be in conflict with the great weight of authority, as it certainly is with the established policy of our government and the genius of our laws. Adequate provision has been made in our laws for the recovery of possession of property which has been forcibly taken or forcibly detained, and as said in Warren v. Kelley, 17 Texas, 551, if one holding title to land was permitted, by himself or his agent, with force and arms, to dispossess one in peaceable possession, the consequences would be breaches of the peace, oppression and bloodshed, and trial by the use of the bowie knife and revolver would be resorted to instead of the quiet and peaceable remedy afforded by the due course of law in the judi-

cial tribunals of the country. While there are decisions of courts of undoubted learning and respectability that sustain the rule insisted upon by the appellant, we believe the great weight of authority is contra. Very full reviews of the authorities and learned decisions of this question may be found in the following cases: Dustin v. Cowdry et al., 23 Vermont, 631; Reeder v. Purdy, 41 Illinois, 281.

Although one is permitted to defend a right by force, it does not follow that he is at liberty to recover by force a right which is denied; the latter can only be justified in extreme cases, such as would justify force in preventing crime and in arresting offenders. (Cooley on Torts, 168.) Upon this theory of the law our statutes, civil and criminal, are founded. Title 45 of the Revised Civil Statutes, provides a remedy and effectual mode for the recovery of the possession of land the possession of which has been forcibly taken or forcibly detained, in all cases where such entry or detainer is made "without the consent of the person having the actual possession." By our Penal Code, articles 572 and 575, one is justified in taking human life under certain circumstances and conditions, in defense of his possession of property, but he is expressly prohibited from doing so to recover possession. The entry by Stanley upon the lot, it seems, did not disturb the railroad company's use of it. If the railroad company had actual possession of the lot, and Stanley made entry without consent of the company, such entry was unlawful, without regard to ownership, and the company could have effected his prompt removal by proper proceeding for that purpose; but Stanley having obtained possession, and held it for several days, appellants had no right to forcibly eject him by destroying his house and removing his effects from the premises, although the railroad company may, in fact, have been the real owner of the property. (T. M. & H. R. R. v. Johnson, 119 U. S. Sup. Ct., 611.) We are of opinion that the court did not err in giving the charge here complained of, nor in refusing to give the third special charge asked by appellants.

While that part of the charge—in which the jury was told that appellants had the right to enclose the house, if it could be done without a breach of the peace—complained of under the seventeenth assignment of error, considered disconnectedly, may contain technical error, considered in connection with and relative to the other portions of the charge, as it should be, we think it contains no such error as requires or would authorize

reversal, especially as there is nothing in the record indicating that appellants were in any way prejudiced thereby.

It is also contended that "the court erred in that part of its charge to the effect that if plaintiff's son was assaulted, or, being in possession of the house for his father, was compelled by force to leave it, such fact or facts could be considered by the jury in making up their verdict; because, 1, said instruction was a charge on the weight of evidence; and, 2, was based upon an assumption in direct conflict with the great preponderance of the evidence; and, 3, it did not submit the alternative of plaintiff's son not having been assaulted and not having been compelled by force to leave the house, and operated to the prejudice of defendant in withholding from the jury the law as it would be upon such alternative."

Upon the question of appellee's son's removal from the house, the charge was as follows: "Unless you believe from the evidence that Stanley's son was either forcibly driven from the house or thrown from it, your verdict should be for defendant."

. "If you believe from the evidence that Stanley's minor son was in the actual possession of the house, holding it for Stanley, and was forced therefrom, or forcibly thrown therefrom, or forcibly driven from the house by defendants or by their authority, and that defendants then caused the house to be torn down and its contents carried away, then the verdict should be for plaintiff for the value of the house and contents so carried away, with interest at eight per cent per annum, and that would be the amount of plaintiff's actual damages; and if you believe from the evidence that such tearing down and carrying away was done with malice, or with bad, evil motive, then, in addition to such actual damages, you would be authorized also to find reasonable and fair exemplary damages to be determined from all the facts and circumstances in evidence." Following this, in the same connection, the court gave the portion of the charge which we understand is complained of by the eighteenth assignment of error, now being considered, which is as follows:

"The plaintiff in this suit is not entitled to any damages for assault upon his son, if any assault was made, as this suit is brought for damages to property, but if assault was made upon the son, or if the son was in possession of the house for Stanley, and was compelled by force to leave the house, that fact may be taken into consideration in this case, which is a suit for dam-

ages for alleged trespass in tearing down and carrying away plaintiff's house and contents."

While we do not hold that the portion of the charge here complained of is absolutely correct in all respects, we believe that, considered with reference to the facts of the case and the other portions of the charge upon the same subject, there is nothing in it of which appellants can justly complain. The charge, taken all together, we think fully as favorable to appellants as the law and facts of the case would justify.

We find no preponderance of the evidence, one way or the other, as to how appellee's boy was gotten out of the house. He testifies that he was thrown out. Appellant Ravey testifies that he went out on his request. This is all the testimony there was on that question. In such case, the question is for the jury and the court below, and this court will not disturb the verdict.

We can not say that the amount of exemplary damages assessed by the jury is excessive. Having considered every question raised by appellants, and the whole case as presented by the record, we conclude that there is no error requiring reversal, and it is our opinion that the judgment of the court below should be affirmed.                                                         *Affirmed.*

Opinion delivered February 7, 1888.