## MARCUS v. HUGULEY.
### No. 10749.

Court of Civil Appeals of Texas. Dallas.
March 14, 1931.

Rehearing Denied April 25, 1931.

1102

Touchstone, Wight, Gormley & Price and Robert B. Holland, all of Dallas, for appellant.

Leake, Henry, Wozencraft & Frank and Adams & Harrell, all of Dallas, for appellee.

JONES, C. J.

This suit was instituted in a district court of Dallas county by appellee, W. J. Huguley, as administrator of the estate of Lenoa W. Huguley, deceased, against appellant, Mrs. Ophelia Marcus, as independent executrix of the estate of Theo Marcus, deceased, and from an adverse judgment appellant has duly perfected an appeal. The following are the necessary facts:

The deceased, Lenoa W. Huguley, was the daughter of W. J. Huguley and his wife, Mrs. Areta Huguley. Mrs. Ophelia Marcus was the wife of Theo Marcus, deceased, and independent executrix of the estate of her deceased husband, who died subsequent to July 2, 1927, the date of the occurrence under inquiry. Lenoa Huguley died in a hospital in the city of Dallas on July 2, 1927, as the result of injuries received by the collision of the automobile, in which she was riding, with an automobile owned by Theo Marcus and driven by his negro chauffeur. Lenoa Huguley was riding in her father's Ford sedan in company with her father, mother, and two other persons. This car was traveling south on Munger boulevard and, while crossing Swiss avenue, which intersects Munger boulevard at right angles, one of its rear wheels was struck by the Marcus car, driven by said chauffeur, and practically demolished. As the result of the collision, Lenoa Huguley was hurled about 50 feet from the place of collision, falling on the cement paving, and the

Marcus car, a large Cadillac sedan, was deflected from its course on the street, carried up an embankment 4 or 5 feet high, and stopped at a distance of about 100 feet on the vacant lot situated on the southeast corner of the intersection of these streets. The large car, occupied only by the negro chauffeur, was operated at a rate of speed estimated from 60 to 70 miles per hour, and was traveling east on Swiss avenue. The speed was not checked as the car approached the intersection of said streets. Two other persons in the Ford sedan were hurled from the car and the other two were pinned beneath its wreckage. When the collision occurred, approximately at 1 p. m., the Huguley car was being operated in a careful and cautious manner and the collision was caused solely from the negligent and reckless driving of said chauffeur. When Miss Huguley was first seen after the collision, she was lying on the pavement in an apparent unconscious condition. She was taken at once in an ambulance to Baylor Hospital, where, for about three hours after she arrived, she was in a conscious condition. Heavy opiates were administered to her and at the expiration of about three hours from the time of the injury, she lost consciousness entirely and died from her injuries shortly after 9 p. m. At the time of her death, Miss Huguley was 27 years of age, in good health, had never married, and was living with her parents and earning about $200 per month as a music teacher. The medical testimony, as well as the testimony of others attending her, was to the effect that, during the time she was conscious, her suffering from physical pain was intense.

Miss Huguley had been well educated and had a Master's degree in both art and music. She appears to have attended school until she was about 25 years of age, during which time her expenses were paid by her father. The three or four months' vacation in the summer, while attending school, she would spend at home and assist her mother very materially both in household duties and in nursing and attending to the wants of her mother, who was in delicate health. During the two or more years that elapsed from the time she finished her education, she made her home with her parents and paid neither board nor room rent. She had classes in music and her studio was in a small house on the same lot on which her parents' home is located. Miss Huguley contributed money from time to time to her mother and at times to her father, but the amount of money so contributed is not shown. She also assisted her mother in the household duties during this time. The mother at such time was in very poor health and was nursed by deceased, who frequently gave her what is termed "fomentations," which seems to have been a kind of hot-water application, and administered to her in other ways. This duty she assumed to her mother

required much of her time at night. She was very much attached to her parents and at all times showed a willingness to assist them whenever she could. Her life expectancy at the time of her death was 37.4 years. Her father and mother were 57 and 56 years of age, respectively, and the life expectancy of the father was 16.5 years, and that of the mother 16.72 years.

As stated above, Theo Marcus died subsequent to the injuries to and death of Lenoa Huguley. W. J. Huguley, as the duly qualified administrator of the estate of his deceased daughter, instituted this suit to recover damages for the benefit of himself and his wife as parents of deceased, and the only beneficiaries under the survival statute, article 5525, R. S. 1925. One count in the petition seeks recovery of damages for the estate of deceased for conscious suffering during the time intervening between her injuries and her loss of consciousness. This was the cause of action which accrued to deceased immediately on receipt of the injuries, and which, under said statute, survived to her estate upon her death. Another count in the petition seeks to recover damages for the pecuniary loss occasioned the father and mother because of the wrongful death of their daughter. The petition clearly alleges a cause of action, consisting in damages because of the negligent and reckless driving of the said chauffeur on the occasion in question. Damages in the sum of $10,000 is prayed for because of the conscious suffering of deceased, and damages in the sum of $25,000 is prayed for because of the pecuniary loss to the beneficiaries, the father and mother, on account of deceased's death.

Appellant answered by plea in abatement, based on a claim that appellee's petition did not, on its face, show the right of the administrator of Miss Huguley's estate to institute the suit. Subject to this plea, the answer contained a general demurrer and a number of special exceptions, a general denial, and an admission that the collision of the cars occurred "at the time and in the manner and place alleged in said petition, and the death of Lenoa Huguley in said collision, as alleged in said petition, in so far as said petition alleges mere facts as distinct from legal conclusions." Appellant further answered by allegations, to the effect that the sole beneficiaries in the damages sought to be recovered were the father and mother, and that they were estopped to recover damages in the present suit, because these beneficiaries had recovered damages in another suit, in their individual capacities, from appellant for the personal injuries each received on account of the same collision that is made the basis of the instant suit. The petition in the former suit is set out in haec verba in appellant's answer, and said suit and the resulting judgment, amounting to the total sum of $20,915.80, awarded to the beneficiaries as damages for such personal injuries, is pleaded as the basis for the plea in estoppel, together with the plea that said judgment had been paid in full and duly receipted. It is also alleged that appellee, by reason of such former suit and recovery and the release executed, had been paid for all damages that can legally be recovered by reason of the collision in question.

The plea of estoppel and allegations on which it is based were stricken from the answer on special exception, filed by appellee, and this ruling of the court is duly assigned as error. Error is also assigned on the refusal of the court to admit in evidence the amount of the judgment in the former suit. Error is further assigned on the admission in evidence of testimony of eyewitnesses to the collision and the rate of speed at which the car was being operated by the chauffeur, and a description of the details and result of the collision. The objection to this evidence and the assignment of error is based on the admission made in the first amended original answer, and in a trial amendment, stating the admission in the following language: "And here defendant shows to the court that it admits the collision of the cars alleged, at the time, manner and place alleged in plaintiff's said petition, and further admits that Lenoa Huguley died as a result of the physical injuries sustained in said collision, as alleged in said petition." Error is also assigned on the ruling of the court in respect to certain arguments made by appellees' attorney in the closing speech. Error is further assigned, to the effect that the finding of the jury of $2,500 for the conscious suffering of deceased is excessive; also, that the finding of $1,250 in favor of the father, as damages for the pecuniary loss sustained by him in the death of his daughter, is without evidence to support it, and is contrary to the overwhelming preponderance of the evidence; also, that the finding of $1,250 in favor of the mother for pecuniary loss is without support in evidence, and is against the overwhelming preponderance of the evidence. It is further contended that the cause of action did not survive the death of appellant's decedent, Theo Marcus. This latter contention is presented as fundamental error. The item of $1,000 for funeral expenses was admitted by appellant to be reasonable, and no error is assigned thereon.

If this last contention of appellant, to the effect that the cause of action here asserted by appellee did not survive the death of Theo Marcus, and hence could not be maintained against appellant as independent executrix of the estate of Theo Marcus, be correct, then a discussion of the other issues raised would not be necessary; for which reason we will dispose of this issue first.

The Fortieth Legislature amended article 5525, R. S. 1925, in an attempt to cure a pos-

sible omission in our survival statute as the same came from the hands of the 1925 codifiers. This amendment became effective March 30, 1927, and was in force at the time of the fatal accident under inquiry. As amended, article 5525 reads: "All causes of action upon which suit has been or may hereafter be brought for personal injuries, or for injuries resulting in death, whether such injuries be to the health or to the reputation, or to the person of the injured party, shall not abate by reason of the death of the person against whom such cause of action shall have accrued, *nor by reason of the death of such injured person,* but in the case of the death of either or both,. all such causes of action shall survive to and in favor of the heirs and legal representatives and estate of such injured party, and against the person or persons liable for such injuries and his or their legal representatives and may be instituted and prosecuted as if such person or persons against whom same accrued were alive." Chapter 239 of the Acts of the Regular Session of the 40th Legislature, § 1.

The addition to the 1925 survival statute, supplying the possible omission, is italicized in the copy set out above, and is the only material change made by the amendment in the then existing statute. The caption to the amendment reads: "An Act to amend Articles 5525 and 4675 of the Revised Civil Statutes of the State of Texas of 1925, by providing for the survival of a cause of action for injuries in case of death of the injured person and regulating the institution of a suit for damage arising on account of death, and stating beneficiaries, and declaring an emergency."

The specific contention in respect to this issue is that this 1927 act is unconstitutional, because of a defect in the caption which causes the act to be in violation of section 35 of article 3 of the Constitution of the State of Texas, which, in effect, declares that no bill shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.

The contention is that, under this provision of the Constitution, that portion of article 5525, as amended by the act of 1927, which declares that the cause of action shall not abate "by reason of the death of the person against whom such cause of action shall have accrued," is void because not named in the caption of the proposed amendment. To this we cannot agree. The effect of the caption to the act under inquiry is to inform the members of the Legislature that they will be called upon to pass an act amending article 5525, by making an addition thereto, so as to include therein the subject expressed by the phrase, "nor by reason of the death of such injured person," and to leave the statute in other respects as it existed. This being an amendment solely for the purpose of making an addition to the statute involved, and as the caption makes plain what the addition is, we are of opinion that section 35 of article 3 of the Constitution is not violated.

■ We overrule appellant's contention that appellees are estopped, as a matter of law, from prosecuting this suit, for the reason that they had prosecuted a suit against appellant for the cause of action that accrued to them because of the personal injuries each received in the collision under inquiry. The former suit was the prosecution of a separate and distinct cause of action from the one now prosecuted; though both suits are based on the commission of the same wrongful act. The former suit accrued as purely a common-law cause of action and arose immediately when the injuries were inflicted on the parties; the instant suit is purely a statutory suit and did not accrue until the death of the daughter, Lenoa Huguley; therefore, the bringing of the two separate suits is not a splitting of a single cause of action. 1 C. J. 1106 declares that: "The rule against splitting is that a single cause of action or entire claim or demand cannot be split up or divided so as to be made the subject of different actions. If this is done and separate actions are brought for different parts of such a demand, the pendency of the first may be pleaded in abatement of the others, and a judgment upon the merits in either will be available as a bar in the others."

■ This is a well-recognized rule, but it will be noted that it refers to splitting a single cause of action, and has no reference to different causes of action accruing to the same parties in different rights, though the causes of action may have resulted from the same wrongful act. The same authority, at page 1108, declares that this rule "does not prevent the bringing of separate actions upon separate and distinct causes of action, whether such causes arise out of contract or tort, and notwithstanding they are of such a character that they might properly be joined in the same action, this circumstance being immaterial, except as authorizing the court in proper causes to order a consolidation of the different actions."

'. The same rule as to splitting a single cause of action is announced by 15 R. C. L. 965, which is likewise cited by appellant as authority for appellant's contention. The same authority, on page 973, declares that: "When the second action between the same parties is upon a different claim or demand, or cause of action, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters

which might have been litigated and determined."

It is not contended by appellant that the issues in the suit at bar were in any way involved in the previous suit for personal injuries, and as the two suits are on causes of action separate and distinct, the contention that appellee is estopped by the former judgment for personal injuries to himself and wife is overruled.

■ Was it reversible error for the trial court, in view of appellant's admission in its answer and in its trial amendment, to admit the evidence of eyewitnesses as to the cause and effect of the collision of the two automobiles? We do not think so. The pleading in this respect is that appellant "admits the collision of the cars alleged at the time, manner, and place alleged in plaintiff's said petition. * * *" The effect of this admission is that the allegations in appellee's petition, as to the manner of the collision, states the truth, and thus makes such allegations evidence in this case. The manner of the collision is alleged in the following language: "That the car in which the said Lenoa W. Huguley was riding was a light car. That the car which was driven into the car in which she, her father and mother and other passengers were riding was a large and heavy car and as a result of the said collision, the car in which the said Lenoa W. Huguley, her father and mother and other passengers were riding was demolished and, wrecked and all of the occupants of the said car in which she was riding were thrown from the same with great violence and some of the occupants of the car were thrown a great distance from the car in which she was riding, and all of the same being the result of the grossly negligent and illegal conduct of the agent and servant of the defendant, Theo Marcus, in the manner in which he was operating or driving his car over the public highway, in a manner wholly reckless and indifferent to the safety of others and at such a rate of speed as to endanger the life or limb of others and flagrantly in violation of law and the ordinances of the City of Dallas."

It appears that the evidence admitted over appellant's objection is only cumulative of the evidence given by the allegations in appellee's petition on undisputed issues, and if its admission were error, it was necessarily harmless.

■ Appellant also contends, that, in view of its admission in its trial amendment that "Lenoa Huguley died as a result of the physical injuries sustained in said collision, as alleged in said petition," it was error for the trial court "to permit the plaintiff to prove by medical testimony the nature, character and extent of the injuries of deceased, and she died as a result of such injuries"; and also to admit evidence as to "the details of the death of plaintiff's decedent as a result of the physical injuries sustained in said collision." This contention perhaps would be correct if appellee's suit was solely for the recovery of the pecuniary loss sustained by the beneficiaries, on account of the death of their daughter. However, another count in appellee's petition sought to recover, as the legal representative of the daughter's estate, damages for the conscious mental and physical suffering visited upon deceased, during the conscious hours preceding her death. The evidence offered was in direct response to this phase of appellee's suit, and of which appellant's admission does not take cognizance; nor was there any request made to restrict consideration of this evidence to this purpose. All assignments of error in this respect are overruled.

■ Is the judgment for $2,500 for the conscious suffering of Miss Huguley excessive? The law places the determination of this amount in the sound discretion of a jury, and it is only when it is clearly made to appear that the jury abused such discretion that appellate courts are authorized to interfere. There are no standards for measuring such an item of damage. It is impossible for any one to know the extent of physical pain felt by this unfortunate sufferer; or to know the mental torture and anguish endured by her before she was relieved by death. The evidence warrants the conclusion that deceased was a young lady of culture, refinement, and highly educated; that she was of high ambitions in life, as shown by the unusual educational preparation she fortified herself with before she entered upon her life's work. During the three hours she was conscious, she must have realized that an end had come to all of her ambitions in life, and that all the sacred associations of home and friends must be severed. During these hours, she was also in the throes of intense physical pain. What money value is necessary to reasonably compensate her estate for this suffering? The jury placed $2,500 as such reasonable compensation, and we think the evidence amply sustains this finding.

■■ Is the judgment of $2,500 for pecuniary loss to deceased's father and mother excessive? Miss Huguley was 27 years of age at the time of her death and her parents had no legal claim to her time or earnings. What assistance she should render them during the remainder of their lives was, of course, entirely voluntary on her part; that she had been in the past of assistance to them in the way of money donations to the mother, and in the way of personal labor in helping in household duties and in nursing and administering to the wants of the sick mother, is shown by the evidence. Under the American mortality tables, this assistance might continue for approximately sixteen years. From the evidence as to what she had done in the

past, together with the disposition shown in reference to aiding her parents, the jury were to determine the pecuniary loss to her parents by reason of her death. The jury's determination of the amount in this respect is binding on the court, unless the amount so found is clearly shown to be greater than what could have been reasonably expected. No such showing was made, but, on the other hand, we believe the evidence amply supports the finding of the jury. This assignment of error is overruled. See authorities collected and annotated under note 28, vol. 14, Vernon's Annotated Texas Statutes, beginning on page 147.

Five bills of exceptions were taken to excerpts from the closing argument of counsel for appellee. At the time each argument was made to the jury, appellant objected on the ground that "said argument was inflammatory, irrelevant, prejudicial, and outside of the record." This objection was overruled and exception duly taken. These bills of exceptions are made the basis for proper assignments of error. The arguments contained in bills of exceptions Nos. 1, 2, and 3 relate to the same subject-matter. In each the jury is appealed to to put themselves in the place of Miss Huguley and "just think what you would do in the experience of that poor, innocent, accomplished, wonderful young lady went through. Just think, being perfectly honest about it, I would not. What would you go through it for?" It was further argued that "the fairest way that a juror can pass upon anything is to place himself in the place of the person who has been injured."

■■■ The only valid objection to this argument is that an appeal is made to the members of the jury to place themselves in the place of the injured young lady, and then to answer for what sum they would go through with her experience. This presents an incorrect rule for measuring such damages, for no man could place a money value on what he would charge to go through with the three hours of conscious suffering and the knowledge that certain death would be the result. However, counsel have a right in argument to state their conclusions, both as to fact and law, even though these conclusions may be erroneous, without thereby suffering the penalty of reversal, unless such conclusion is couched in language that transcends the bounds of legitimate argument. · Pitts v. Wood et al. (Tex. Civ. App.) 125 S. W. 954, 955. In the instant case, bill of exception No. 1 shows that the argument appealing to members of the jury to place themselves in Miss Huguley's place was made in reply to an argument of counsel for appellant, that "it is unfair to put himself or you (the jury) in Miss Lenoa Huguley's place." We think counsel for appellant in the above stated the correct rule of law, but counsel for appellee did not think so, and the argument above re-

ferred to was the result. It is a general rule of law that one counsel in his argument cannot invite argument on a legal proposition and then assign error to the opposing argument of counsel on the other side, in an effort to reply thereto, unless such reply be clothed in language which shows a purpose only to inflame or prejudice the minds of the jury. We can discern no such purpose as this, but it appears to us to be counsel's view on the proposition of law announced to the jury by opposing counsel. It is the reference by appellant to the same subject-matter, thereby inviting argument on the same proposition by counsel of appellee, that differentiates this case from the case of Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435.

In bill of exception No. 4, it appears that counsel for appellee was answering the argument of opposing counsel that appellee should recover nothing in this suit. The argument branded the negro chauffeur of Marcus as a "fiend who was driving that car, who sat up there in all his regal splendor, who, the chauffeur of the defendant, Marcus, driving a great big car down the street, what did he care for anybody's rights, what did he care for anybody else? He felt the insignia of his office and the importance of his position, and nobody else or their rights, or their body, or their right to do anything in the world. Take the attitude of counsel in this case. All he said and after all he knows of what she suffered, this defendant submits that you should answer 'nothing' is about as cruel as the act of the chauffeur that brought about this young lady's death."

This is very strong language and goes further in its denunciation than is ever warranted in an argument to a jury. The bill of exception shows that counsel for appellant had argued that the beneficiaries of this suit were not entitled to anything because of the physical suffering of the daughter, and this position of appellant's counsel is being criticized as cruel as the acts of the chauffeur. Counsel for appellant had a right to make such argument, and counsel for appellee had a right to reply in strong and earnest language, provided he did not transcend the rule of legitimate argument. Notwithstanding it is in reply to argument made by opposing counsel, we think that the refusal of the court to stop counsel from the denunciatory remarks would show reversible error, unless this record affirmatively shows it did not result in injury to appellant. This will be discussed later.

■■■ We do not think that reversible error is shown by the argument of counsel as given in bill of exception No. 5. It appears from such bill that counsel for appellant had complained to the jury that Mrs. Marcus had been compelled to come to court three times in reference to this incident and had suffered that inconvenience. The argument is in reply

thereto and is in the nature of a comparison between the small inconvenience alluded to by appellant's counsel and the terrible result of the negligence and recklessness of the chauffeur of the Marcus car on the occasion in question. In making this argument, counsel does not go out of the record, but makes such argument from the facts as admitted by appellant to have existed. We hold that the argument excepted to, being in reply to argument made by appellant's counsel and being within the record, does not show reversible error.

■■■ It has long been the law in this state that improper argument by adverse counsel, within itself, is not sufficient for reversing a judgment. In the case of I. & G. N. Ry. Co. v. Irvine, 64 Tex. 529, the Supreme Court, speaking through Judge Stayton, gives the following rule in this respect: "The use of improper language or course of argument by adverse counsel, within itself, furnishes no sufficient reason for reversing a judgment; and it is only in cases in which the preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes a ground for reversal. Parties are not to be punished by 'reversals for the improprieties of their counsel, unless there is reason to believe that the course pursued affected the merits of the case."

This rule was reaffirmed by our Supreme Court in Sinclair et al v. Stanley, 69 Tex. 718, 7 S. W. 511; Railway Co. v. Washington, 25 Tex. Civ. App. 600, 63 S. W. 538, 541; and by a number of decisions from Courts of Civil Appeals. Texas Jurisprudence, in volume 3, p. 1261, thus announces the same rule: "In order to justify a reversal for improper argument the record must show at least some substantial probability that the argument affected, adversely to the losing party, the jury's verdict." We do not understand that the case of Bell v. Blackwell, 283 S. W. 765, by the Commission of Appeals, has overruled all of these decisions and announced a contrary rule of law. This case, as we understand it, holds that, where error is assigned by appellant on improper argument of counsel, appellant does not have to show affirmatively that injury resulted from the improper argument, but, on the contrary, it must appear from the record that no injury resulted therefrom. This is not contrary to the rule announced by our Supreme Court.

■ Does it reasonably appear that the jury adopted appellant's erroneous contention that they must say by their verdict what amount of money could have induced them to undergo the suffering, physical and mental, which the record shows Miss Huguley underwent? The verdict of the jury clearly answers "no" to this inquiry. Does it reasonably appear that the denunciatory language used by appellee's counsel, in reference to the conduct of the negro chauffeur on the occasion in question, prejudiced the jury against appellant? We think the verdict of the jury clearly answers, "No." We are therefore of opinion that, even if the arguments forming the basis of assignments of error in this respect be admitted to be improper, the result of the trial clearly shows that the jury was in no way influenced thereby, and if there be indulged the presumption of injury by reason of the improper argument, which, in this case, could only have affected the amount of the verdict, such presumption is overcome when the amount of this judgment is considered.

In determining the effect of this argument, it must be borne in mind that the negro chauffeur, who was denounced in such strong language, was not a witness in the case, and the acts for which he was denounced were admitted to be true by the pleadings of appellant. It must be further borne in mind that appellant makes no contention but that the death of Lenoa Huguley resulted from the negligent acts of the chauffeur. If this were a case of conflicting evidence as to the cause of such death, where a jury would be warranted in returning a favorable finding either for appellant or appellee, and where an improper argument by opposing counsel might cause the jury to swerve from one side to the other, then there would be presented a different question. The only contested issue is the amount of the verdict, for the undisputed evidence calls for a finding in favor of appellee for some amount.

Finding no reversible error in the trial of this case, we are of opinion the judgment should be affirmed, and it is so ordered.

Affirmed.