13693

WATTS v. COPELAND

(170 S. E., 780)

*Messrs. Richey & Richey; Blackwell, Sullivan & Wilson* and *Sloan & Sloan,* for appellant,

450

*Messrs. Simpson, Cooper & Babb* and *Huff & Huff,* for respondent, cite:

September 21, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On December 31, 1924, a default judgment in the sum of $1,987.08 was obtained by the Laurens Trust Company against E. W. Copeland and Mrs. Lizzie H. Copeland, his wife, in an action on two promissory notes, and was duly entered in the office of the Clerk of Court for Laurens County on January 1, 1925. The trust company on November 20, 1926, assigned this judgment to one J. D. Watts as collateral security for the payment of a debt which it owed him. On May 31, 1928, the Copelands made a motion in the original cause to set aside the judgment on the ground that the summons and complaint had not been served on them, and that consequently the Court had not acquired jurisdiction of them. The Judge who heard the motion refused to grant it, and on appeal this Court affirmed the circuit order as to E. W. Copeland, but reversed it as to Mrs. Copeland, with directions that the judgment be set aside as to her. *Laurens Trust Co. v. Copeland,* 154 S. C., 390, 151 S. E., 617.

Subsequently, in January, 1931, the original summons and complaint, which had been lodged in the office of the sheriff

of Laurens County on December 1, 1924, were served on Mrs. Copeland, who filed an answer setting up the defenses of want of and failure of consideration. She also specifically pleaded the Statute of Limitations as a bar to recovery; and alleged that "no summons and complaint were ever lodged with any one or proceeding started with the intention of having her served on said indebtedness." Later, by order of Court, Watts was substituted as plaintiff in lieu of the Laurens Trust Company; and the case, on the issues made by the pleadings, was tried at the October, 1932, term of Court for Laurens County, Hon. W. H. Grimball presiding. The trial Judge overruled the defendant's motion for a directed verdict, made on grounds hereinafter referred to, but granted a similar motion in plaintiff's favor, saying: "I think the assignment of that judgment carried with it the cause of action leading up to the judgment, and if the Supreme Court set the judgment aside, I think the plaintiff has the right to proceed with what cause of action the trust company had leading up to the judgment."

The defendant, by her appeal, presents for determination three questions, all of which relate to the Court's action in the matter of the directed verdict.

The first of those questions, raised by the first and second exceptions, is whether the respondent acquired "the title to any liability on the part of the appellant on the notes to the Laurens Trust Company under the collateral assignment transferring and assigning the judgment against her which was subseqquently set aside." As to what rights are transferred to the assignee under an absolute assignment of a judgment, the authorities are in general agreement.

In 17 Am. & Eng. Ency. of Law, at page 882, appears the following: "The absolute assignment of a judgment passes all the assignor's assignable rights therein to the assignee, and gives to the latter the right to use every remedy, lien, or security available to the assignor as a means of enforcement or indemnity, unless expressly expected or re

served in the transfer. Thus the assignment carries with it the debt on which the judgment is founded, so long as such judgment remains unreversed."

In 2 Freeman on Judgments (5th Ed.), at page 2206, the writer says: "An assignment of a judgment which was void because in excess of the jurisdiction of the Court has been held to transfer the debt for which the judgment was entered. And it seems that the assignment of a judgment necessarily carries with it the cause of action on which it was based, together with all the beneficial interest of the assignor in the judgment and all its incidents, thereby terminating any further right of control by the latter, over the proceedings in the cause."

In 34 C. J., 650, we find: "On a valid assignment of a judgment the assignee succeeds to all the rights, interest, and authority of his assignor, including the debt or claim on which the judgment was based, provided the claim is assignable and the assignee succeeds to all incidental or collateral rights, remedies, and advantages existing at the time of the assignment and then available to the judgment creditor."

As to what is here meant by the word "incident," we find the following Cyclopedic Law Dictionary, at page 471: "This term is used both substantively and adjectively of a thing which, either usually or naturally and inseparably, depends upon, appertains to, or follows another that is more worthy. For example, rent is usually incident to a reversion (1 Hilliard, Real Prop., 243), while the right of alienation is necessarily incident to a fee simple at common law, and cannot be separated by a grant (1 Washb., Real Prop., 54). So a Court baron is inseparably incident to a manor, in England. Kitch. Cts., 36; Co. Litt., 151."

In *Com. v. Wampler*, 104 Va., 337, 51 S. E., 737, 738, 1 L. R. A. (N. S.), 149, 113 Am. St. Rep., 1039, 7 Ann. Cas., 422, the Court observed: "The distinction as to what does and what does not pass by incidental assignment is in some instances nice and difficult to draw; but in order for

it to pass the incident must in a legal sense constitute a security for the debt, and that can hardly be predicated of a mere collateral right of action against a public officer for a *quasi* tort in failing to discharge an official duty, although his misconduct may affect the value of the judgment."

The appellant states, however, that she is not primarily concerned as to what incidental rights may or may not have passed to the assignee Watts under the assignment, but that she is concerned as to what effect the setting aside of the judgment had on such rights. Her position is that "the vacation of the judgment carried with it the nullification of any and all incidental rights the respondent may have acquired under the particular assignment." Counsel for respondent contend that the assignee, by the assignment, became the owner of the judgment and of the cause of action on which it was founded, and that therefore he was properly substituted for the trust company as party plaintiff to prosecute the action on his own behalf.

In *Sullivan v. Thomas*, 6 S. C., 201, it is stated (quoting syllabus) : "Where a judgment of the Circuit Court dismissing a complaint is, on the plaintiff's appeal, wholly set aside by the Supreme Court, and the cause returned to the Circuit Court, the case stands as if no judgment of dismissal had been pronounced, and parties defendant having claims similar to those of the plaintiffs may establish them against their co-defendant, in whose behalf the judgment of dismissal had been pronounced."

In Freeman on Judgments, Volume 2, page 2416, we find: "The reversal of a judgment by any competent authority restores the parties litigant to the same condition in which they were prior to its rendition. The judgment reversed becomes mere waste paper; and the parties to it are allowed to proceed in the Court below to obtain a 'final determination of their right' in the same manner and to the same extent as if their cause had never been heard or decided by any Court."

And in 4 C. J., 1204: "The effect of a general and unqualified reversal of a judgment, order, or decree is to nullify it completely and to leave the case standing as if such judgment, order, or decree had never been rendered."

In 17 A. & E. Ency. of Law, 885, it is said: "The general rule that on the reversal or vacation of a judgment the parties to the suit are restored to their original rights and liabilities is not affected by the fact that the judgment is in the hands of an assignee for value."

Also in 34 C. J., 652: "On reversal or vacation the assignee's interests are defeated, except where they are protected as against the assignor by the peculiar terms of the assignment."

And in the same volume at page 651: "But the assignee can acquire no other or superior right than those vested in his assignor; and if the judgment was fraudulently or wrongfully entered or obtained, he will take nothing under it which he can successfully defend."

*Ward v. Haggard*, 75 Ind., 381, appears to be somewhat in point. That was a case in which one Weaver gave his note to Ward and others, who afterwards, by their written indorsement thereon, assigned it to one Taylor. Subsequently Taylor brought action on the note against Weaver and obtained a judgment which he afterwards assigned to Haggard. Upon issuance of execution it was found that Weaver was insolvent. Thereupon Haggard sued Ward and others as indorsers on the note. The Court held: (1) That the effect of Taylor's assignment of the judgment to Haggard was simply to vest in the latter the title to such judgment and to enable him to maintain, in his own name, any action on the judgment which Taylor might have maintained; (2) that Haggard could not be regarded as the assignee of the note, which, with the cause of action, was merged in the judgment; and (3) as the note could not after judgment be directly assigned by written indorsement thereon, it could not be transferred indirectly by the mere assign-

ment of the judgment in which it was merged, so as to give Haggard the cause of action theretofore existing against Ward and others upon their indorsement to Taylor of the note on which the judgment was rendered.

*Vila v. Weston,* 33 Conn., 42, was a case in which the plaintiff obtained judgment against the defendant in an action on a promissory note; this judgment was later reversed, and the case was again entered on the docket for trial and prosecuted to a second judgment. While the first judgment was in full force, the plaintiff assigned the "claim" on which it had been obtained to Goodman, an attorney, for collection. Goodman had the custody of the note, which had been indorsed in blank by Vila, until the first judgment was rendered; he then lodged it with the Clerk of Court, where it remained until after that judgment was reversed, when he again took it into his possession. After the reversal of the first judgment, Goodman assigned all of his right, title, and interest in the note to Vila, which, it is stated, was done for the purpose of reinvesting the legal title in him in order that he might prosecute the suit to final judgment. The Court held: (1) That the note was merged in the judgment; and (2) that where a judgment is obtained on a note and is afterwards assigned, the assignor and the assignee are respectively restored by the reversal of such judgment to their original positions in respect to the note.

In *Sinclair v. Stanley,* a Texas case, reported in 69 Tex., 718, 7 S. W., 511, it appears that Stanley had recovered a judgment against Sinclair in a former trial, and that he afterwards had assigned this judgment to Waul & Walker to secure the payment of certain debts, and that later, upon reversal of the judgment, they had transferred it back to Stanley. The Court held that after reassignment of the judgment to Stanley he was thereby restored to his original right of action, unaffected by the assignment that he had made to Waul & Walker, and that the reassignment did not change the ground of his recovery upon a new trial.

We gather from the authorities cited, that where the assignment of the judgment is absolute, it carries with it the debt on which the judgment was founded and the cause of action on which it was based, with all of the beneficial interest of the assignor in the judgment and all its incidents. In such a case it seems, although the question is not entirely free from doubt, that the assignee, upon the reversal or vacation of the judgment, may proceed, as the real party in interest, in his own name against the debtor upon the original cause of action. It appears that a different rule applies where the judgment is assigned, as was concededly done here, as collateral security for the payment of a debt. However, as the question of estoppel, decisive of the issue here made, arises under the facts of this case, a discussion of the rights acquired by such assignee is rendered unnecessary.

It is conceded that there was a valid assignment to Watts of the judgment against E. W. Copeland.

When the judgment against Mrs. Copeland was reversed and declared by the Court to be a nullity, she was then served with the summons in the original case, which had been lodged in the sheriff's office along with that for E. W. Copeland at the institution of the suit. Thereafter, by order of Judge Ramage, J. D. Watts was substituted for the Laurens Trust Company as plaintiff in the case. Undoubtedly such substitution was made on the ground that Watts was the lawful assignee of the debt upon which the suit was brought and the cause of action on which it was based, and that he was such assignee by virtue of the judgment assigned him by the Laurens Trust Company. The trust company made no objection to such substitution; and from the Court's order no appeal was taken by Mrs. Copeland. On the contrary, as stated, she elected to file an answer and go to trial on the issues made by the pleadings. Clearly, in these circumstances, the question here made is *res adjudicata*. Mrs. Copeland, by her failure to appeal from the

Court's order of substitution, is now estopped to deny that Watts was the proper party to prosecute the action.

The appellant also imputes error (Exceptions 3 and 4) to the trial Judge in directing a verdict against her and not in her favor, "when there was uncontradicted testimony in response to her denial that the notes were for value and to her defense of failure of consideration."

Reference to defendant's motion for a directed verdict, as printed in the record, discloses that it was made on two grounds: (1) That there was no proof that J. D. Watts was the owner and holder of the notes; and (2) that the uncontradicted testimony of Mrs. Copeland was to the effect that the first time she was served with any papers was in 1931, and that the maturity date of the notes sued on was more than six years theretofore. It is true that in argument on the motion, Mr. Wilson, of counsel for defendant, stated to the Court that Mrs. Copeland had testified "she got nothing for the notes"; but it does not appear that he made this statement as one of the grounds of the motion, but merely as a part of his argument thereon. However, as the point is argued here at some length by both sides, the Court will consider the question as properly before it.

After Mrs. Copeland had pleaded the defense named, the Court, on motion of plaintiff, directed her to make her answer more definite and certain, by specifically stating "wherein there was a failure of consideration as to the indebtedness represented by the notes sued on in the action." She then filed an amended answer alleging that one of the notes was for five shares of stock in the Laurens Trust Company, but that these shares were not worth the sum for which the note was given; and that the other note was for two acres of worthless oil land, which the agents and officers of the Laurens Trust Company knew to be worthless at the time the note was executed. On trial of the case the plaintiff introduced in evidence the two notes, the original summons and complaint, the judgment against E. W. Copeland, the

assignment to the plaintiff, and the writ book as to the service of the summons. The defendant offered no testimony as to failure of consideration; and the only evidence as to want of consideration was her statement, in regard to one of the notes, that she did not "receive any consideration to sign it," and as to the other, that she "received nothing for it."

It will be observed that by her answers to questions of counsel, the defendant merely stated, in effect, that the notes were without consideration. She did not say what the agreed consideration, if any, was, or wherein the trust company had failed to carry out any understanding it had with her in respect thereto. In other words, she testified to no facts tending to support her allegations that the notes were not executed for value. While in her responses to the questions asked she may have had in mind the allegations of her amended answer, she offered no evidence whatever to sustain these allegations. Hence, we are of opinion that, in any view of the testimony, she was not entitled to a directed verdict on this ground. Nor do we think that her mere statement that she "received nothing," was sufficient, without explanation or reason, to overcome the presumption that she was a party to the notes for value (Section 6775, Code 1932), and to take the case to the jury on the question of want of consideration.

In the third place, the appellant contends that the trial Court committed error (Exception 5) in refusing to allow the jury to say whether or not the original summons and complaint were lodged with the sheriff of Laurens County, with the intent that service be made on Mrs. Copeland. We think the contention is without substantial merit. The only reasonable inference to be drawn from the documentary evidence offered by plaintiff is that the lodgment of the papers in the sheriff's office was with such intent.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.